SOFONDA BRADSHAW, Plaintiff-Appellant, v. THE CITY OF METROPOLIS, Defendant-Appellee.

Fifth District   No. 5—96—0553

Opinion filed December 5, 1997.

MAAG, J., dissenting.

Mark D. Prince, of Hughes & Prince, of Carbondale, for appellant.

Brad K. Bleyer, of Marion, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Sofonda Bradshaw, appeals from an order of the circuit court of Massac County granting summary judgment for defendant, the City of Metropolis, based upon sections 2—109 and 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2—109, 2—202 (West 1992)).

On appeal, plaintiff contends that the trial court erred in finding that the municipality was protected from liability under the Act for a police officer's negligent operation of his authorized emergency vehicle while responding to a 9-1-1 call. We reverse and remand.

I

On February 15, 1994, Officer Gregory Neihoff was on duty and patrolling on East Fifth Street when he received from the dispatcher a 9-1-1 call for a residence on Johnson Street. Officer Neihoff had responded to an earlier call that evening from the same address. The caller making the second 9-1-1 call told the dispatcher that the subject of the first 9-1-1 call had returned and that the caller would shoot him if the subject refused to leave.

After receiving the call from the dispatcher, Office Neihoff proceeded to the Johnson Street address. He traveled down East Fifth Street to Ferry Street. Officer Neihoff had been traveling down Ferry Street for three to four blocks at 60 miles per hour with his lights activated. Plaintiff's car was the only other vehicle on the road.

Plaintiff was heading home from work in a northerly direction on

Ferry Street. Plaintiff intended to turn left onto Ninth Street. As she neared the intersection of Ferry and Ninth Streets, plaintiff activated her turn signal and pulled into the left lane.

About two blocks away from plaintiff's car, Officer Neihoff reached down to activate his siren. He briefly took his eyes off the road to make sure he was reaching in the direction of the siren. When he looked up, plaintiff's car had moved into the turn lane where Officer Neihoff was to pass plaintiff's car. Officer Neihoff began braking and lost control of the squad car. His squad car "fishtailed" and struck the rear end and right side of plaintiff's car.

On January 27, 1995, plaintiff filed a complaint against the City of Metropolis and the Metropolis police department, alleging that plaintiff was injured as a result of Officer Neihoff's negligence. Defendant filed a special and limited appearance seeking to quash service on the police department, claiming that it is not a separate legal entity with any legal standing to be sued. The court on March 14, 1995, granted the police department's special and limited appearance.

Defendant filed its answer and affirmative defense alleging immunity from liability pursuant to sections 2—109 and 2—202 of the Act. On June 2, 1995, defendant filed its motion for summary judgment on count I of plaintiff's complaint. Based on Officer Neihoff's deposition testimony, defendant argued that it was immune from liability because Officer Neihoff was engaged in the enforcement and execution of the law at the time of the accident. On August 18, 1995, the trial court entered an order granting defendant's motion for summary judgment as to count I.

Subsequently, defendant filed a second motion for summary judgment on count II of plaintiff's complaint. Relying on the deposition testimonies of Officer Neihoff and plaintiff, defendant contended that Officer Neihoff's acts did not constitute wilful and wanton conduct. The trial court granted defendant's motion. This appeal followed.

## II

Plaintiff posits that the trial court erred in determining that the Act immunized the municipality from liability because the officer was in the act of executing and enforcing the law and that his acts did not constitute wilful and wanton conduct. Plaintiff maintains that the Act and the Illinois Vehicle Code (the Code) (625 ILCS 5/11—205 (West 1992)) are in conflict and that where such conflict exists, the more specific statute, the Code, preempts the more general provisions of the Act. Plaintiff contends that the Code's more specific provisions delineating the conduct and duty of the driver of an autho-

rized emergency vehicle govern over the general pronouncements of the Act which shield a public entity or its employees from liability. We agree.

■■■ Section 2—109 of the Act provides:

"§ 2—109. A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1992).

Section 2—202 of the Act provides:

"§ 2—202. A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—202 (West 1992).

Section 11—205 of the Code provides, in pertinent part:

"§ 11—205. Public officers and employees to obey Act—Exceptions. ***

(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law ***, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

(c) The driver of an authorized emergency vehicle may:

1. Park or stand, irrespective of the provisions of this Chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property; [and]

4. Disregard regulations governing direction of movement or turning in specified directions.
***

(e) *The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons*, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." (Emphasis added.) 625 ILCS 5/11—205(b), (c)(1), (c)(2), (c)(3), (c)(4), (e) (West 1992).

Section 11—907 of the Code provides, in pertinent part:

"§ 11—907. Operation of vehicles and streetcars on approach of authorized emergency vehicles. (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of this Code or a police vehicle properly and lawfully making use of an audible or visual signal,

(1) the driver of every other vehicle shall yield the right-of-way

and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall, if necessary to permit the safe passage of the emergency vehicle, stop and remain in such position until the authorized emergency vehicle has passed, unless otherwise directed by a police officer ***[.]

\***

(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11—907(a)(1), (b) (West 1992).

The provisions of the Act are general and deal with many general potential liabilities of a public entity for the negligent acts or omissions of its employees. *Emulsicoat, Inc. v. City of Hoopeston*, 99 Ill. App. 3d 835, 838, 425 N.E.2d 1349, 1352 (1981). The provisions of the Code specifically exempt police officers and other drivers of authorized emergency vehicles from particular traffic laws when responding to an emergency call, while they require the driver of an authorized emergency vehicle "to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11—205(e), 11—907(b) (West 1992).

Both the Act and the Code can apply to this factual situation since it involves a public entity and a police officer engaged in the act of executing and enforcing the law at the time of the occurrence. Our research did not reveal any authorities that directly discuss the conflict between the protections and duties imposed by these statutes. However, several cases have addressed conflicts between various sections of the Act and the provisions of other statutes. *Cleaver v. Marrese*, 253 Ill. App. 3d 778, 625 N.E.2d 1129 (1993); *Emulsicoat, Inc. v. City of Hoopeston*, 99 Ill. App. 3d 835, 425 N.E.2d 1349 (1981). The general rules of statutory construction and the above-cited cases have informed our decision that sections 11—205 and 11—907 of the Code govern this case.

■ "[W]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail." *Cleaver*, 253 Ill. App. 3d at 780, 625 N.E.2d at 1131. Several cases have held that the Act is a general statute.

In *Cleaver*, the plaintiff brought a medical malpractice suit against a doctor and the township hospital. The trial court dismissed the hospital because the plaintiff did not file suit within the one-year statute of limitations mandated by section 8—101 of the Act (745 ILCS 10/8—101 (West 1992)). The plaintiff argued that the two-year

statute of limitations of section 13—212 of the Illinois Code of Civil Procedure (735 ILCS 5/13—212 (West 1992)) governing medical malpractice actions applied. This court held that the Act is a general statute applying to all civil actions, while section 13—212 of the Code of Civil Procedure is a specific statute and therefore applied specifically to actions arising out of patient care. Thus, the court concluded that section 13—212 governed the facts of that case.

In *Emulsicoat*, a subcontractor filed an action against the city, a village, and city officials for their alleged failure to obtain a contractor's bond required by section 1 of "An Act in relation to bonds ***" (the Bond Act) (Ill. Rev. Stat. 1979, ch. 29, par. 15). The *Emulsicoat* court, in determining the applicability of each Act to the municipalities' liability for the failure to obtain a bond, concluded that the Act is a general statute dealing with many general potential liabilities and that the Bond Act is a specific statute concerned with specific liability. *Emulsicoat*, 99 Ill. App. 3d at 838, 425 N.E.2d at 1352. The court, using the rule of statutory construction that a specific statute will control over a general one, held that the Bond Act specifically addressed the liability issue before it.

This court in *Bosen v. City of Collinsville*, 166 Ill. App. 3d 848, 520 N.E.2d 638 (1987), considered the applicability of the immunity provisions of the Act to an automobile accident involving a police officer responding to an emergency call. The city argued that it was not liable to the decedent's estate for the negligent operation of a motor vehicle by one of its police officers. The plaintiff cross-appealed, contending that the police officer's actions were wilful and wanton. The *Bosen* court determined that the evidence did not establish that the police officer's conduct rose to the level of wilful and wanton misconduct but rather constituted simple negligence. Therefore, the immunity provisions of the Act immunized the city from liability.

The dissent in *Bosen* disagreed with the majority's analysis in that the majority failed to consider liability under sections 11—205(e) and 11—907(b) of the Code (Ill. Rev. Stat. 1983, ch. 95$^1$/2, pars. 11—205(e), 11—907(b) (now 625 ILCS 5/11—205(e), 11—907(b) (West 1992))), which establish ordinary negligence as the standard of care for the operation of emergency vehicles by police officers. *Bosen*, 166 Ill. App. 3d at 851, 520 N.E.2d at 640 (Karns, J., dissenting). The dissent concluded that the city would be immune from liability only under section 2—109 of the Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—109 (now 745 ILCS 10/2—109 (West 1992))). The dissent reasoned, "Inasmuch as the officer is not immune from liability for ordinary negligence, the City is not immune." 166 Ill. App. 3d at 851, 520 N.E.2d at 640.

*Bosen* is readily distinguishable from the case at bar. In *Bosen*, the issue before the court concerned whether the police officer's conduct was wilful and wanton thereby stripping the city of the immunity granted under the Act. Here, the question is whether the more specific provisions of the Code apply to the particular facts of this case, instead of the general provisions of the Act which encompass many potential liabilities.

■ In light of the present circumstances, we conclude that the Code is a specific statute containing express provisions establishing a duty and standard of care governing the operation of emergency vehicles by police officers. While granting drivers of authorized emergency vehicles certain exemptions from the general traffic laws, sections 11—205(e) and 11—907(b) do not absolve a driver of such vehicles from the duty to use due regard for the safety of all persons on the public highways. Consequently, a driver of an emergency vehicle can be held liable for negligence arising out of the breach of the duty to use due care in the operation of an emergency vehicle. Accordingly, the circuit court erred in granting defendant's motion for summary judgment.

For the foregoing reasons, the order of the circuit court of Massac County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

KUEHN, J., concurs.

JUSTICE MAAG, dissenting:

I do not believe that the legislature in adopting sections 11—205(e) and 11—907(a)(1) and (b) of the Code (625 ILCS 5/11—205(e), 11—907(a)(1), (b) (West 1992)) intended to alter the laws governing sovereign immunity in our state. I disagree with the majority's assertion that these are specific statutes which control the more general immunity provisions. I do not believe that these statutes have anything at all to do with immunity.

Moreover, the majority claims that no authorities "directly discuss the conflict" between the immunity provisions and the provisions governing emergency vehicles. 293 Ill. App. 3d at 393. I see no conflict. In any event, the statutes have been discussed previously. See *Postich v. Henrichs*, 267 Ill. App. 3d 236, 641 N.E.2d 975 (1994). The *Postich* court does not agree with the majority in this case. Neither do I.