DAWN E. CARTER, n/k/a Dawn E. Rudnick, Plaintiff-Appellant, v. THE DU PAGE COUNTY SHERIFF *et al.*, Defendants (Randall R. Simpson, Defendant-Appellee).

Second District   No. 2—98—0147

Opinion filed May 12, 1999.

444

Paul W. Grauer and Edward Adam Czapla, both of Paul W. Grauer & Associates, of Schaumburg, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Alison I. Abel, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Plaintiff, Dawn Carter, n/k/a/ Dawn Rudnick, appeals from the trial court's judgment dismissing her negligence count against defendant, Randall Simpson. Plaintiff argues that the trial court erred in concluding that section 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2—202 (West 1996)) immunized Simpson for his acts of negligence that caused his car accident with plaintiff. Plaintiff contends that the Tort Immunity Act does not apply because (1) the standard of care established in sections 11—205 and 11—907 of the Il-

linois Vehicle Code (Vehicle Code) (625 ILCS 5/11—205, 11—907 (West 1996)) supercedes the immunity provisions of the Tort Immunity Act; and (2) Simpson was not executing or enforcing the law when the accident occurred.

This cause arises from an accident between plaintiff and Simpson at the intersection of Butterfield Road and Park Boulevard. At the time, Simpson, who had his emergency lights and his siren operating, was traveling through the intersection against the traffic light and on the wrong side of the road. Plaintiff was traveling with the traffic light. Neither saw the other until they were both in the intersection. Their cars collided and ricocheted into two other vehicles. Following the accident, both plaintiff and Simpson were treated at a hospital.

Subsequently, plaintiff filed a three-count complaint against defendants, the County of Du Page (County), the Du Page County sheriff (Sheriff), and Simpson. Count I sought to recover from Simpson for his negligence in causing the accident. Count II sought recovery from all three defendants, alleging that Simpson had acted wilfully and wantonly, and count III sought recovery from all three defendants, alleging that Simpson had, while acting under color of law, violated plaintiff's rights (see 42 U.S.C.A. § 1983 (West 1994)).

Pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1996)), defendants sought to dismiss plaintiff's complaint, alleging that, as to count I, Simpson was immune from liability pursuant to section 2—202 of the Tort Immunity Act and that counts II and III failed to state a cause of action (see 735 ILCS 5/2—615 (West 1996)). The trial court (1) dismissed all allegations against the County for failing to state a cause of action; (2) dismissed count I pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1996)), finding Simpson immune from liability for his negligent acts; and (3) dismissed counts II and III against Simpson and the Sheriff for failing to state a cause of action. The trial court found that the dismissal of the allegations against the County and the dismissal of count I against Simpson were final and appealable orders (see 155 Ill. 2d R. 304(a)). The court also granted plaintiff leave to file an amended complaint with respect to counts II and III against Simpson and the Sheriff. Subsequently, plaintiff filed a timely notice of appeal. We note that plaintiff's notice of appeal states that she is appealing the dismissal of count I against Simpson and the dismissal of the allegations against the County. On appeal, however, plaintiff does not argue that the trial court erred in dismissing the allegations against the County; thus, we do not review the propriety of that dismissal.

■ Plaintiff argues that sections 11—205 and 11—907 of the Vehi-

cle Code supercede the immunity provision found in section 2—202 of the Tort Immunity Act. Therefore, plaintiff concludes, the trial court erred in finding that Simpson's actions were immunized and that dismissal pursuant to section 2—619 was proper. Section 2—619 affords "litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). In deciding a motion to dismiss under section 2—619, courts may consider the pleadings, depositions, and affidavits. *Zedella*, 165 Ill. 2d at 185. We review a dismissal pursuant to section 2—619 *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

■ Section 11—205 of the Vehicle Code provides, in pertinent part:

"(b) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

(c) The driver of an authorized emergency vehicle may:

1. Park or stand, irrespective of the provisions of this Chapter;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be required and necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property;

4. Disregard regulations governing direction of movement or turning in specified directions[.]

\* \* \*

(e) *The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons*, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." (Emphasis added.) 625 ILCS 5/11—205 (West 1996).

Section 11—907 of the Vehicle Code provides:

"(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of this Code or a police vehicle properly and lawfully making use of an audible or visual signal,

(1) the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall, if necessary to permit the safe passage of the emergency vehicle, stop and remain in such position until the authorized emergency vehicle has passed, unless otherwise directed by a police officer and

(2) the operator of every streetcar shall immediately stop such

car clear of any intersection and keep it in such position until the authorized emergency vehicle has passed, unless otherwise directed by a police officer.

(b) *This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.*" (Emphasis added.) 625 ILCS 5/11—907 (West 1996).

Section 2—202 of the Tort Immunity Act provides:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—202 (West 1996).

The emphasized portions of sections 11—205 and 11—907 impose a duty on drivers of emergency vehicles to refrain from negligence. *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389, 395 (1997); see also *Sundin v. Hughes*, 107 Ill. App. 2d 195, 200 (1969). Relying upon *Bradshaw*, plaintiff argues that these specific provisions governing how drivers of emergency vehicles must drive control over the more general immunity provision found in section 2—202 of the Tort Immunity Act.

■ The *Bradshaw* court noted that a conflict existed between the protections and duties set forth in sections 11—205 and 11—907 of the Vehicle Code and in section 2—202 of the Tort Immunity Act. *Bradshaw*, 293 Ill. App. 3d at 393. The court explained that, where two statutory provisions exist, one of which is generally applicable and the other of which relates to only one subject, the particular provision prevails. *Bradshaw*, 293 Ill. App. 3d at 393. The court recognized that the Tort Immunity Act has previously been found to be a general statute. *Bradshaw*, 293 Ill. App. 3d at 393, citing *Cleaver v. Marrese*, 253 Ill. App. 3d 778 (1993); *Emulsicoat, Inc. v. City of Hoopeston*, 99 Ill. App. 3d 835 (1981). After examining those cases and the provisions at issue, the *Bradshaw* court concluded that the Vehicle Code "is a specific statute containing express provisions establishing a duty and standard of care governing the operation of emergency vehicles by police officers. *** Consequently, a driver of an emergency vehicle can be held liable for negligence arising out of the breach of the duty to use due care in the operation of an emergency vehicle." *Bradshaw*, 293 Ill. App. 3d at 395.

■ Plaintiff urges us to adopt *Bradshaw*'s reasoning and conclude that the applicable portions of the Vehicle Code apply to count I of her complaint instead of the immunity provision in the Tort Immunity Act. In fact, in plaintiff's reply brief, her counsel argues that we are bound by *Bradshaw*, a decision issued by the Appellate Court, Fifth

District. Plaintiff's counsel represents that the supreme court has held that the decision of any division of the appellate court is binding on all others.

This argument is clearly erroneous for two reasons. First, and most disturbingly, the language counsel relies upon and quotes at length comes, not from the court's opinion, but from a special concurring opinion. See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 94-95 (1997) (Harrison, J., specially concurring). We caution plaintiff's counsel that this court does not look kindly upon such misrepresentations. In future cases, counsel should ensure that language he represents as the court's holding comes from the majority opinion.

Second, even if the quoted language had been the court's opinion, it would not support counsel's argument that we are bound by *Bradshaw*. Justice Harrison's concurring opinion argues only that Illinois has a single appellate court and that therefore the decision of any division of that court is binding on every circuit court. *Aleckson*, 176 Ill. 2d at 94 (Harrison, J., specially concurring). The concurrence does not state or imply that the decision of one division of the appellate court is binding on any other division of the appellate court.

In any event, we are not persuaded by the reasoning of the court in *Bradshaw*. We find the statutes at issue in this case to be analogous to those at issue in *Henrich v. Libertyville High School*, 186 Ill. 2d 381 (1998). There, the supreme court considered whether the immunity provided by sections 24—24 and 34—84a of the School Code (105 ILCS 5/24—24, 34—84a (West 1994)), or the immunity provided by section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1994)), controlled in the plaintiff's suit arising out of defendants' failure to supervise public school activities. *Henrich*, 186 Ill. 2d at 383. The School Code confers upon educators the status of parent or guardian to their students, thereby granting them the immunity that parents enjoy. *Henrich*, 186 Ill. 2d at 388-89. Thus, under the School Code, educators are immunized from acts involving ordinary negligence but not from acts involving wilful and wanton misconduct. *Henrich*, 186 Ill. 2d at 388-89. In contrast, section 3—108(a) of the Tort Immunity Act provides immunity to a school district for acts involving both negligent conduct and wilful and wanton misconduct. *Henrich*, 186 Ill. 2d at 387.

Although the plaintiff in *Henrich* argued that the more specific provisions of the School Code prevailed over the general provisions of the Tort Immunity Act, the supreme court stated that it need not decide whether the relevant sections of the School Code were more specific than the relevant section of the Tort Immunity Act. *Henrich*,

186 Ill. 2d at 391. Rather, the supreme court concluded that the plain language of section 3—108(a) of the Tort Immunity Act immunized a school district from the failure to supervise an activity on or the use of school property; therefore, section 3—108(a) controlled the disposition of the plaintiff's case. *Henrich*, 186 Ill. 2d at 391. The court noted that section 24—24 of the School Code and section 3—108(a) of the Tort Immunity Act each stood "in its own sphere," with the School Code applying to both private schools and public schools, and the Tort Immunity Act applying only to public schools. *Henrich*, 186 Ill. 2d at 392. The supreme court reconciled the two statutes by noting that, in enacting section 3—108(a), the legislature chose to grant a greater immunity to public school teachers and public school districts than to private school teachers and private school districts. *Henrich*, 186 Ill. 2d at 392.

■ In contrast to the *Bradshaw* court, we conclude that, in this case, as in *Henrich*, we need not decide whether sections 11—205 and 11—907 of the Vehicle Code are more specific and therefore prevail over section 2—202 of the Tort Immunity Act. Rather, we find that each of the statutes at issue stands "in its own sphere" and that the immunities provided by each statute serve different purposes. *Henrich*, 186 Ill. 2d at 392. As we have previously observed, "the privileges afforded under section 11—205 [and section 11—907 of the Vehicle Code] to drivers of authorized emergency vehicles (who may or may not be State employees) do not themselves immunize such drivers from liability for reckless disregard for the public safety." *Postich v. Henrichs*, 267 Ill. App. 3d 236, 244 (1994). Sections 11—205 and 11—907 apply equally to public and private employees. In contrast, section 2—202 of the Tort Immunity Act does not apply to private employees and provides immunity to a public employee only for his act or omission in the execution or enforcement of any law, unless he acts wilfully and wantonly. 745 ILCS 10/2—202 (West 1996).

■ Statutes relating to the same subject matter must be compared and construed with reference to one another so that effect may be given to the provisions of each, if reasonable. *Henrich*, 186 Ill. 2d at 391-92. Accordingly, we find that pursuant to the plain language of the two statutes, the legislature has chosen to grant broader immunity to a public employee actually engaged in the execution or enforcement of a law than to a private employee or to a public employee not engaged in the execution or enforcement of a law.

Before determining whether count I of plaintiff's complaint was properly dismissed, we must determine whether the trial court properly held that defendant Simpson was engaged in the execution or enforcement of a law when the accident occurred. If Simpson was

engaged in the execution or enforcement of a law when the accident occurred, section 2—202 of the Tort Immunity Act applied and plaintiff's negligence count against Simpson was properly dismissed.

Defendant Simpson testified at his deposition that, on the date of the collision, he was the acting sergeant of the Du Page County sheriff's department. On that date, the sheriff's department dispatcher radioed Deputy Morgan, the beat officer on duty, concerning a death and said that the fire department was on the way to the scene. Simpson said that he could hear on his radio the dispatcher's call to Deputy Morgan. Simpson then radioed Morgan and told him that he was also on his way. Simpson explained that he responded to the call because supervisors are required to respond to death scenes. Simpson stated that he advised the dispatcher that he would be "10-39," which meant he would be using his lights and sirens. Simpson also testified that, while en route, he and Morgan received a dispatch stating that the fire department requested that he "expedite to the scene," which meant that the fire department needed the officers at the scene right away. Simpson said that, based upon his experience, a death call was an emergency response call. Simpson also stated he believed that, just prior to the collision, Deputy Morgan had advised him that Morgan had arrived at the scene.

Deputy Jonathan Pugsley testified in a deposition that he is an employee of the Du Page County sheriff's department. Pugsley stated that, on the day of the accident, he heard Deputy Morgan dispatched to a "2-11," which is a death investigation. He later heard Morgan radio that he had arrived at the scene with the fire department. Pugsley testified that a "2-11" is a natural death, while a "2-12" is an unnatural death. Pugsley said that there was no set protocol for responding to a "2-11," and that the response depended upon the circumstances and any additional information that might be given by the dispatcher. Pugsley said that it would be appropriate to respond in a "10-39" fashion.

Deputy Richard Morgan testified at his deposition that, on the date of the accident, he received a dispatch that he was to proceed to an address. He thought that the call had been given as a sick or injured person call, but he was not certain. Morgan said that he probably responded to the call with his lights activated, but again he was not certain. Morgan thought it had taken him around five minutes to respond to the call. Upon arriving at the scene, Morgan said that he determined the death was an unnatural death based upon the deceased's age, his appearance, and the testimony of family members. Morgan stated that the deceased had been dead for several hours. Morgan further stated that because the death was an unnatural death

he conveyed to dispatch that supervisory personnel and the detective should be informed. Morgan said that if the supervisory officer heard his dispatch he would automatically respond. Morgan did not recall receiving a dispatch that he should "expedite to the scene."

Based upon this evidence, the trial court concluded that, pursuant to department regulations and the request of the fire department, Simpson, in his role as acting sergeant, was required to be at the scene on an expedited basis to handle the report of death. Accordingly, the trial court held that defendant Simpson was engaged in the execution or enforcement of a law when the accident occurred, and, therefore, Simpson was immune from plaintiff's allegations of negligence pursuant to section 2—202 of the Tort Immunity Act.

■ The immunity conferred by section 2—202 is a limited immunity, and its dimensions are narrower than the scope of a police officer's employment or the performance of his official duties and functions. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 57 (1998). Not every act or omission by a police officer while on duty is immunized. *Zimmerman*, 183 Ill. 2d at 57. Instead, a police officer is granted immunity only where he is negligent while actually engaged in the enforcement or execution of a law. *Zimmerman*, 183 Ill. 2d at 57. Generally, the determination of whether an officer is executing or enforcing a law is a question of fact which must be made in light of the circumstances in each case. *Aikens v. Morris*, 145 Ill. 2d 273, 286 (1991). Nonetheless, the question may be decided as a matter of law where the evidence is undisputed or where the evidence is susceptible to only one possible interpretation. *Simpson v. City of Chicago*, 233 Ill. App. 3d 791, 792 (1992).

The Illinois Supreme Court has held that a police officer transporting a prisoner from one lockup facility to another is not executing or enforcing a law. *Aikens*, 145 Ill. 2d 273. Nor is an officer engaged in the execution or enforcement of a law where he is routinely cruising a neighborhood. *Leaks v. City of Chicago*, 238 Ill. App. 3d 12 (1992). Similarly, where an officer was responding to a nonemergency call concerning a missing person when his car collided with the plaintiff's car, the officer was not executing or enforcing a law at the time of the accident. *Simpson*, 233 Ill. App. 3d 791. In contrast, courts have held that a police officer was executing or enforcing a law where he was writing a traffic ticket (*Trepachko v. Village of Westhaven*, 184 Ill. App. 3d 241 (1989)), where he was investigating a traffic accident (*Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211 (1986)), or where he was attempting to disperse an unruly crowd by driving through it (*Thompson v. City of Chicago*, 108 Ill. 2d 429 (1985)).

Based upon the foregoing case law, this court has noted that a po-

lice officer does not have to be engaged in an emergency response in order for section 2—202 immunity to apply. *Bruecks v. County of Lake*, 276 Ill. App. 3d 567 (1995). The trial court in this case relied upon this court's decision in *Bruecks* in finding that plaintiff's negligence claim should be dismissed as a matter of law.

In *Bruecks*, the plaintiff appealed the trial court's grant of summary judgment in favor of defendants Lake County and one of its deputy sheriffs on his negligence complaint. *Bruecks*, 276 Ill. App. 3d 567. The defendant officer testified at his deposition that he was returning to the station at the end of his shift when he heard a report of shots fired and responded, hitting plaintiff's vehicle with his car while en route to the scene. *Bruecks*, 276 Ill. App. 3d at 568. The officer further testified that three other deputies also had responded to the dispatch, that he was not using his siren or flashing lights while en route, and that he did not feel that the situation was an emergency. *Bruecks*, 276 Ill. App. 3d at 568. This court affirmed the trial court's grant of summary judgment in favor of defendants, holding that the officer was clearly being called upon to execute or enforce a law when responding to the dispatch of shots fired. *Bruecks*, 276 Ill. App. 3d at 569. This court stated that its conclusion was not altered by the fact that the officer was not specifically dispatched, did not have his emergency lights or sirens activated, and did not consider the situation an emergency. *Bruecks*, 276 Ill. App. 3d at 569.

■ We note that there are similarities between this case and our decision in *Bruecks*; however, we find that the evidence in this case, unlike the evidence in *Bruecks*, raised questions of fact concerning whether Simpson was executing and enforcing a law when he collided with plaintiff. Certain key facts in the depositions of the parties were disputed, and we cannot say that the evidence was susceptible to only one interpretation. For example, there were inconsistencies concerning the nature of the original dispatch and whether it was a call of a death, a natural death, or a sick and injured person. Further, despite the trial court's finding that Simpson had been told to expedite to the scene, there was conflicting testimony concerning this fact. Simpson testified that the dispatcher said the fire department had requested that he expedite to the scene, while Morgan testified that he could not recall receiving such a dispatch. There were further inconsistencies concerning whether Simpson actually learned about the call after Deputy Morgan had arrived on the scene and had asked the dispatcher to notify a supervisor, or had learned about the call at the same time that Deputy Morgan was dispatched to the scene.

Although it is clear that Simpson's activities were governed by some legal requirement, it is not clear from the evidence in this case

whether those legal requirements were raised to the level of executing and enforcing a law. See *Simpson*, 233 Ill. App. 3d at 793. While it is arguable that every task performed while on duty is in enforcement or execution of a law, the supreme court has held that the legislature did not intend such a broad interpretation of section 2—202 of the Tort Immunity Act. *Aikens*, 145 Ill. 2d at 285. Given the questions of fact. concerning Simpson's activities at the time of the accident, the trial court erred in determining as a matter of law that defendant Simpson was enforcing or executing a law and therefore was entitled to immunity from plaintiff's negligence claim pursuant to section 2—202 of the Tort Immunity Act.

For the foregoing reasons, we reverse the trial court's order granting defendants' motion to dismiss count I against Simpson and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER and RAPP, JJ., concur.