# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hatteberg v. Cundiff*, 2012 IL App (4th) 110417

---

| | |
|---|---|
| Appellate Court Caption | JOHN HATTEBERG and ELIZABETH HATTEBERG, Plaintiffs-Appellants, v. CODY B. CUNDIFF, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0417 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | January 25, 2012<br><br>March 13, 2012<br>January 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiffs suffered when their car was struck by defendant's vehicle, the trial court's dismissal of the counts alleging common-law negligence and the entry of summary judgment for defendant on the counts alleging willful and wanton conduct were affirmed, since defendant was a volunteer firefighter responding to an emergency call about a three-vehicle accident at the time of the collision, he was immune from liability for negligence pursuant to the Tort Immunity Act, and there was no evidence supporting the conclusion that a trier of fact could find defendant's conduct was willful and wanton. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 09-L-71; the Hon. Jeffrey B. Ford, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Tague (argued), of Flynn, Palmer & Tague, of Champaign, for appellants.

Denean K. Sturino (argued) and Edward C. Eberspacher IV, both of O'Hagan Spencer LLC, of Chicago, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Justices Appleton and McCullough concurred in the judgment and opinion.


**OPINION**

¶ 1    In December 2008, plaintiffs, John and Elizabeth Hatteberg, were injured when defendant, Cody B. Cundiff, collided with their vehicle. The accident occurred while defendant, a volunteer firefighter, was responding to an emergency call regarding a three-car motor vehicle accident. Defendant was driving a personal (not an emergency) vehicle at the time of the accident, as he had just received the call and, pursuant to fire department policy, was driving to the Thomasboro Fire Station (Station).

¶ 2    Plaintiffs filed suit against defendant, seeking recovery for personal injuries sustained in the accident. Defendant moved to dismiss two counts and moved for summary judgment on the remaining two counts. The trial court dismissed two counts after it determined defendant fell within the parameters of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/5-106 (West 2008)), and therefore was not subject to liability for negligence. The court entered summary judgment for defendant on the remaining two counts, finding that the facts of the case would not support a jury finding that defendant's conduct was willful and wanton.

¶ 3    Plaintiffs appeal.


¶ 4                                    I. BACKGROUND

¶ 5    On December 20, 2008, the Champaign County Emergency Dispatch System (METCAD) sent out an emergency call to Thomasboro firefighters regarding an accident with unknown injuries and three vehicles off the road on Leverett Road. Defendant, a volunteer firefighter, received this emergency call. According to Thomasboro Fire Chief Paul Cundiff, the expectation of all volunteer firefighters was that they would carry their department-issued pagers with them at all times and respond to any emergency call, so long as they were in the county and not under the influence of drugs or alcohol. The department protocol was that the firefighters should report to the fire station upon receiving an emergency call unless their route to the station would cause them to pass the accident, at which point they could stop,

render aid, and give information to other responders. Defendant responded to the emergency call and was en route to the Station in a personal vehicle at the time of the collision.

¶ 6        Defendant was driving west on County Road 2500 N. at 55 miles per hour, approaching the United States Highway Route 45 intersection. He observed another vehicle stopped at the stop sign, and when he was approximately 500 feet from the sign, he applied his brakes to stop his vehicle behind the one ahead of him. According to defendant's deposition, when he applied his brakes, his vehicle began to skid on the ice. Defendant let off the brake and then applied it again, and even though he had slowed to approximately 35 miles per hour, he realized he was not going to be able to stop his vehicle in time to avoid colliding with the vehicle in front of him. When defendant was approximately 100 feet from the vehicle in front of him, he made the decision to move into the left lane and go around the vehicle. Defendant stated he did not have enough time to see whether there was any traffic on Route 45 before going through the intersection at approximately 35 to 40 miles per hour. Defendant collided with plaintiffs' vehicle, which was traveling southbound on Route 45. Defendant stated that he was not aware of the slick road conditions until he first attempted to apply his brakes.

¶ 7        Elizabeth Hatteberg, a passenger in the vehicle driven by John Hatteberg, testified in her deposition that the country roads they had been traveling seemed "all right," but when they turned on Route 45, the road seemed "very slick." She did not see defendant or his vehicle prior to the accident. John Hatteberg testified in his disposition that when he turned onto southbound Route 45, he slowed his vehicle to 40 or 45 miles per hour because the road seemed slick. He stated it had not been snowing prior to the accident. He only saw defendant's vehicle a second before the collision and was not able to estimate the speed it was traveling.

¶ 8        In April 2009, plaintiffs filed four causes of action seeking recovery for their injuries. Counts I and II were based on common-law negligence and counts III and IV were premised upon the theory of willful and wanton conduct. In December 2009, defendant filed a motion to dismiss counts I and II, arguing that those claims were barred because he was a public employee acting within the scope of his employment at the time of the accident and, thus, was not liable for any injury caused by the negligent operation of his motor vehicle while responding to an emergency call pursuant to the Tort Immunity Act. In February 2010, the trial court dismissed counts I and II, finding defendant immune from a negligence claim under the Tort Immunity Act because he was (1) a public employee; (2) acting within the scope of his employment; (3) while operating a motor vehicle; and (4) acting in response to an emergency call. In January 2011, defendant filed a motion for summary judgment on counts III and IV, arguing that no record evidence supported plaintiffs' claims that defendant's conduct constituted willful and wanton behavior or exhibited conscious disregard for safety, which it must do for defendant to be liable under the Tort Immunity Act. In April 2011, the court granted summary judgment in favor of defendant.

¶ 9        This appeal followed.

## II. ANALYSIS

¶ 11       Plaintiffs argue on appeal that (1) the trial court erred in granting defendant's motion to

dismiss counts I and II (735 ILCS 5/2-619(a)(9) (West 2008)) based upon a determination that defendant could not be liable to plaintiffs on a theory of negligence due to tort immunity because he was not responding to an emergency at the time of the accident, and (2) the court erred in awarding summary judgment to defendant on counts III and IV (735 ILCS 5/2-1005(b) (West 2008)) because reasonable minds could draw different inferences as to whether defendant's conduct was willful and wanton. We disagree.

¶ 12                                 A. Negligence Claims

¶ 13        Section 5-106 of the Tort Immunity Act provides:

"Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of an person to a medical facility." 745 ILCS 10/5-106 (West 2008).

Therefore, in order for defendant to be immune under the Tort Immunity Act, he must demonstrate the following: (1) he was a public employee; (2) acting within the scope of his employment; (3) while operating a motor vehicle; (4) when responding to an emergency call; and (5) his conduct was not willful and wanton.

¶ 14                      1. *Defendant Was Responding to an Emergency*

¶ 15        Plaintiffs first argue that defendant does not qualify for immunity under the Tort Immunity Act because he was not "responding to an emergency" at the time of the collision. Plaintiffs contend that because defendant was actually en route to the Station, rather than the accident scene at the time of the collision, the fourth element is not satisfied. As such, plaintiffs assert that the trial court erred in dismissing counts I and II, which were both based on common-law negligence. We disagree.

¶ 16        This court has previously stated that "[p]ublic entities and their firefighting employees are generally immune from negligence liability for decisions made and actions taken while operating a motor vehicle in response to an emergency call." *Young v. Forgas*, 308 Ill. App. 3d 553, 558, 720 N.E.2d 360, 363 (1999). The general policy behind the Tort Immunity Act is to shield emergency responders "from personal liability for decisions made and actions taken while responding to an emergency. If the operator is haunted by the possibility of facing devastating personal liability for actions taken in the course of responding to an emergency, then employee performance will be hampered." *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 944, 605 N.E.2d 618, 621 (1992). The only relevant inquiry is whether the public employee has been summoned to respond to an emergency, which is commonly defined as an " 'urgent need for assistance or relief.' " *Young*, 308 Ill. App. 3d at 561, 720 N.E.2d at 365 (quoting Merriam-Webster's Collegiate Dictionary 377 (10th ed. 1998)). In *Young*, we explicitly rejected the plaintiff's argument that the defendant (driver of the fire truck) was not responding to an emergency call at the time of the accident, determining instead that, based on the plain language of the Tort Immunity Act, an automatic alarm directed to the fire station was sufficient to constitute an "emergency call" even if the

alarm turned out to be false. *Id*. at 562, 720 N.E.2d at 366.

¶ 17    Here, defendant was clearly responding to an emergency call he received from METCAD regarding an accident involving three vehicles. Pursuant to department policy, and verified by Fire Chief Cundiff, following the receipt of an emergency call, all firefighters, including defendant, were expected to report to the Station. The sole exception to this policy applies when a firefighter's normal route to the Station would cause him or her to pass the accident scene. Here, defendant's normal route to the Station would not have taken him past the accident site; therefore, he was reporting first to the Station per department policy.

¶ 18    Plaintiffs argue that because defendant's deposition testimony was that he was "driving as he normally would," he was not driving as if he was responding to an emergency, *e.g.*, driving faster to get to the scene of the emergency sooner. Plaintiffs analogize defendant's situation to that of firefighters responding to a call "to rescue a cat from a tree." Obviously, this is not what happened here. Defendant received an emergency call about an accident involving three vehicles with unknown injuries, not a cat in a tree. Although defendant was not on his way to the scene of the accident at the time of the collision, he was still responding to the emergency call. He would not have been on the road at that time, in that particular location, had it not been for the emergency call he received.

¶ 19    Plaintiffs also argue that because defendant was driving a personal family vehicle en route to the Station, rather than an authorized emergency vehicle in route to an emergency, his actions were more akin to "driving to work" or "driving to the holiday party." They assert that persons operating private vehicles in an attempt to get to the police or fire station in non-emergency situations are not granted the same privilege to bend the rules as are persons operating emergency vehicles to make up time. However, we have already determined that defendant was responding to an emergency. Defendant was a volunteer firefighter who did not have the advantage of a fire truck on hand to respond to the emergency call. The only source of transportation that defendant had to respond was a personal vehicle. Further, the plain language of section 5-106 of the Tort Immunity Act refers to the "operation of a motor vehicle" and makes no distinction between the type of motor vehicle a public employee is operating. 745 ILCS 10/5-106 (West 2008). Thus, section 5-106 of the Tort Immunity Act applies to all vehicles, not just authorized emergency vehicles, such as police cars, ambulances, or fire trucks.

¶ 20                              2. *Vehicle Code*

¶ 21    Section 11-205(c)(2) of the Illinois Vehicle Code (Vehicle Code) provides that the driver of an emergency vehicle may proceed past a stop signal, "but only after slowing down as may be required and necessary for safe operation." 625 ILCS 5/11-205(c)(2) (West 2008). Section 11-205(e) also states:

    "The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." 625 ILCS 5/11-205(e) (West 2008).

¶ 22    Section 11-907 of the Vehicle Code governs operation of vehicles and streetcars on

approach of authorized emergency vehicles. This section establishes that drivers shall yield the right-of-way to emergency vehicles, but specifically states that it "shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11-907(b) (West 2008).

¶ 23        Plaintiffs urge this court to adopt the view of the Fifth District in *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389, 395, 688 N.E.2d 332, 335-36 (1997), and a dissent from the Third District's decision in *Lanning v. Harris*, 342 Ill. App. 3d 965, 968-69, 796 N.E.2d 667, 669-70 (2003) (Holdridge, J., dissenting), and find that sections 11-205 and 11-907 of the Vehicle Code (625 ILCS 5/11-205(d), 11-907(c) (West 2010)) not only apply in this case, but also trump section 5-106 of the Tort Immunity Act, which would disgorge defendant of his immunity. The Fifth District's decision and Third District's dissent are not only contrary to our holding in *Young*, but also contrary to the decisions of the First, Second, and Third Districts. See *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 363, 714 N.E.2d 547, 553 (1999) (First District, holding that both statutes apply but that the Vehicle Code did not abrogate the Tort Immunity Act); *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 450, 710 N.E.2d 1263, 1267-68 (1999) (Second District, holding that the Vehicle Code does not trump the Tort Immunity Act but that both statutes were applicable); *Lanning v. Harris*, 342 Ill. App. 3d 965, 967-68, 796 N.E.2d 667, 668-69 (2003) (Third District, holding that the Vehicle Code and the Tort Immunity Act address different actors under different circumstances). In *Young*, we rejected the Fifth District's *Bradshaw* decision and agreed with the Second District that "the Vehicle Code applies to all drivers of emergency vehicles while the Tort Immunity Act applies only to public employees." *Young*, 308 Ill. App. 3d at 560, 720 N.E.2d at 364 (citing *Carter*, 304 Ill. App. 3d at 450, 710 N.E.2d at 1267-68).

¶ 24        Plaintiffs also point out that the cases they cite above (*Carter, Sanders, Lanning, Bradshaw,* and *Young*) are all factually distinguishable from the case at bar, because those cases involved emergency vehicles, whereas this case involves a personal vehicle.

¶ 25        Defendant responds that plaintiffs' argument "is an attempt to fit a square peg in a round hole" because whether a conflict between the Tort Immunity Act and the Vehicle Code exists is misplaced and irrelevant to the facts of this case. We agree with defendant.

¶ 26        As stated in *Young*, the Vehicle Code and the Tort Immunity Act are not in conflict because the Vehicle Code applies to all drivers of emergency vehicles while the Tort Immunity Act applies only to public employees. Under the plain language of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employees like Cundiff (745 ILCS 10/5-106 (West 2008)). Public employees may still be liable for willful and wanton conduct, however, under section 5-106.


¶ 27                                    B. Willful and Wanton Claims

¶ 28        Plaintiffs next argue that the trial court erred in awarding summary judgment to defendant on counts III and IV because reasonable minds could draw different inferences as to whether defendant's conduct was willful and wanton. We disagree.

¶ 29        We review the trial court's grant of summary judgment *de novo*. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661, 837 N.E.2d 922, 928 (2005). Summary judgment

is appropriate when the pleadings, depositions and admissions on file, together with any affidavits, show that no genuine issue exists as to any material fact such that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010).

¶ 30    The Tort Immunity Act provides:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2010).

Whether conduct is willful and wanton is ultimately a question of fact. *Young*, 308 Ill. App. 3d at 562, 720 N.E.2d at 366. However, a court may "hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other contrary conclusion can be drawn [from the record presented]." *Id.* (citing *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683, 688-89 (1995)).

¶ 31    Willful and wanton conduct has been defined by our supreme court as " 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' " (Internal quotation marks omitted.) *Young*, 308 Ill. App. 3d at 563, 720 N.E.2d 360 at 366 (quoting *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406 (1994)). Willful and wanton conduct is a "state of mind different from that needed in ordinary and gross negligence" and "can be found where aggravating circumstances are present, such as where there is a 'conscious and deliberate disregard for the rights of others.' " (Internal quotation marks omitted.) *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449, 593 N.E.2d 522, 531 (1992).

¶ 32    Illinois appellate courts have affirmed several trial court decisions allowing summary judgment or directed verdict based on a finding that the factual circumstances in the cases did not constitute willful and wanton conduct as a matter of law. See, *e.g.*, *Williams v. City of Evanston*, 378 Ill. App. 3d 590, 601, 883 N.E.2d 85, 94 (2007) (rejecting the plaintiff's argument that the defendant firefighter engaged in willful and wanton conduct because there was no evidence he was traveling at a high rate of speed when he drove through the intersection); *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 367, 879 N.E.2d 969, 975-76 (2007) (affirming summary judgment for police officers and the city on a willful and wanton claim where the police pursuit that led to the collision was done in little traffic, was of short duration, and the police car was presumed to go fast).

¶ 33    Plaintiffs argue that a trier of fact could disbelieve defendant's sworn deposition testimony and, as such, urge this court to reverse the trial court's grant of summary judgment. Their argument is based on a number of inferences and speculation drawn from unsubstantiated facts. Further, plaintiffs offer no record evidence to contradict defendant's testimony.

¶ 34    Plaintiffs first posit that a trier of fact could conclude the weather conditions on Route 45 also existed within defendant's short drive from his home to the intersection, and because of that, defendant knew or should have known of the adverse pavement conditions. Plaintiffs

assert that their testimony indicates freezing rain and icy road conditions existed on Route 45, and that defendant admitted there were icy road conditions on County Road 2500 N. at the Route 45 intersection. However, the fact that adverse road conditions existed on Route 45 and at the intersection of Route 45 and County Road 2500 N. does not necessarily mean that defendant would have experienced the same adverse road conditions on his journey from his house to the intersection.

¶ 35    Defendant testified in his disposition that as he was traveling westbound on County Road 2500 N., he did not encounter any precipitation. He did not use his windshield wipers. Defendant stated he did not notice the road was slick until he attempted to apply his brakes and began to slide. To avoid hitting the car in front of him, defendant moved into the passing lane to go around the car, went through the stop sign, and collided with plaintiffs at approximately 35 to 40 miles per hour. John Hatteberg testified that the roads were not slick until he turned onto Route 45, at which point he reduced his speed to between 40 and 45 miles per hour. John stated that at some point before the accident, but not at the time of the collision, it was raining but he could not remember where or how soon before. He stated it was not snowing at the time of the collision. Elizabeth Hatteberg testified that driving conditions on the country roads they had been traveling prior to turning on Route 45 seemed all right to drive and that the roads did not become slick until they turned onto Route 45. John testified he only saw defendant's car a second before the collision, and Elizabeth stated she did not see his car at all.

¶ 36    If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of material fact. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257, 811 N.E.2d 670, 674 (2004). The testimony given by plaintiffs here does not contradict the testimony of defendant regarding the road conditions.

¶ 37    Plaintiffs also argue that the emergency call itself–a motor vehicle accident involving three cars off the road–is further circumstantial evidence that defendant had knowledge of the road conditions. No evidence in the record shows that the three-car accident was caused by adverse weather conditions, and again, plaintiffs' argument requires us to make an assumption that the accident involving the three cars was caused by weather conditions. As such, this is not a material fact either.

¶ 38    Plaintiffs next argue that a trier of fact could find that defendant made a conscious decision to act with such indifference and recklessness so to constitute willful and wanton behavior. Specifically, plaintiffs posit that defendant "made a conscious decision to not take a one car accident by driving towards the ditch or rear-ending a stationary vehicle after he thinks he slowed down some, but to risk a collision with a highway speed cross traffic or a head-on collision with eastbound County Road 2500 traffic." We agree that defendant did make a conscious decision to pass the stationary car and proceed through the intersection; however, such a decision does not necessarily constitute willful and wanton behavior.

¶ 39    Here, defendant had to make a split-second decision of whether to (1) rear-end the stationary vehicle in front of him, which would cause certain property damage and high potential of personal injury to himself and the passengers in the other vehicle; (2) careen into

the ditch on the right, which would certainly cause property damage to his vehicle and a high chance of personal injury to himself; or (3) move into the left lane to pass the stationary vehicle, and attempt to make it through the intersection, where property damage and personal injury were only possibilities, not certainties. Defendant made the only decision that had any chance of not causing damage or injuries. This does not amount to willful and wanton conduct. In fact, defendant made a conscious and deliberate choice to protect the safety of the passengers in the stationary car by going around them.

¶ 40       The facts of this case are very similar to those in *Joiner v. Birch*, 21 Ill. App. 2d 249, 157 N.E.2d 676 (1959). In *Joiner*, the evidence presented on a motion for a directed verdict indicated that the defendant was not aware of any ice on a bridge until he hit a patch of ice and began to skid, resulting in the defendant losing control of the car and consequently, a fatal accident. *Id.* at 250, 157 N.E.2d at 677. We held that after considering all evidence in the light most favorable to the plaintiff, no record evidence indicated the defendant's conduct was willful and wanton. *Id.* at 251, 157 N.E.2d at 677-78. Specifically, we stated, "Evidence of skidding on the highway alone does not constitute evidence of wilful and wanton misconduct." *Id.*, 157 N.E.2d at 678.

¶ 41       Here, no evidence was provided in the record that defendant's conduct was willful and wanton. As previously stated, defendant testified that he was unaware of the road conditions until first applying his brakes and sliding. Plaintiffs did not experience slick road conditions until turning on Route 45. Plaintiffs cite *Young* for the proposition that the trier of fact must determine whether a defendant's actions are willful and wanton. In *Young*, this court did reverse the trial court's grant of summary judgment on some counts; however, we did so only after finding that a number of material factual issues were in dispute regarding the defendant's actions leading up to the collision. *Young*, 308 Ill. App. 3d at 564, 720 N.E.2d at 367.

¶ 42       Contrary to plaintiffs' contention, *Young* only holds that where a record presents multiple factual disputes concerning whether a party acted willfully or wantonly, summary judgment is not appropriate. In *Young*, the defendant testified he came to a complete stop before going through the red light, but another witness testified that the defendant never came to a complete stop and proceeded through the intersection at approximately 15 miles per hour. *Id*. Yet another witness testified that the defendant did not even attempt to slow down or stop and was traveling approximately 30 to 40 miles per hour as he went through the intersection. *Id*. In this case, neither plaintiffs nor any witness has offered any evidence–other than speculation and assumptions–that would contradict defendant's testimony.

¶ 43       "[O]n a motion for summary judgment, a fact will not be considered in dispute if raised by circumstantial evidence alone unless the circumstances or events are so closely related to each other that the conclusions therefrom are probable, not merely possible." *Jewish Hospital of St. Louis v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 755, 633 N.E.2d 1267, 1272 (1994). Further, "where the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, then the conclusion that exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be permitted to make that inference." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473, 936 N.E.2d 1050, 1066 (2010).

¶ 44 Here, plaintiffs contend that a jury could conclude the following: (1) "that in the absence of any effective braking maneuver that [defendant's] speed was not reduced: from 55 to 35-40 miles per hour"; (2) that defendant "consciously chose a path without regard to traffic on Route 45 to attempt to get through the intersection as quickly as he could"; (3) and that defendant's "failure to try the brakes again was consistent with his prior knowledge of the existence or probable existence of icy pavement." No evidence supports the conclusion that a trier of fact could find defendant's conduct was willful and wanton. Because no contrary conclusion can be drawn from the record that defendant acted willfully and wantonly and no material *facts* are in dispute, summary dismissal of counts III and IV was proper.

¶ 45                                III. CONCLUSION

¶ 46 For the reasons stated, we affirm the trial court's judgment.

¶ 47 Affirmed.