8 November 1999

NO. 4-99-0126

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

SHAWN YOUNG, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Sangamon County

PAUL FORGAS, JR., and THE CITY OF ) No. 96L207

SPRINGFIELD, )

Defendants-Appellees. ) Honorable

) Stuart H. Shiffman,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

On November 1, 1995, plaintiff, Shawn Young, was injured in a collision involving his pickup truck and a City of Spring­field fire depart­ment vehicle driven by defen­dant Paul Forgas.  The acci­dent occurred while Forgas and other emergency response vehicles were responding to a fire alarm at the Urban League building.  Plain­tiff filed suit against Forgas and the City of Springfield.  Defen­dants moved to dismiss some counts and moved for summary judgment on others pursu­ant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 1994)).  The trial court granted defendants' motion and plain­tiff ap­peals.  We affirm in part, reverse in part, and remand.   

I. BACKGROUND

At approximately 2:30 p.m. on November 1, 1995, Spring­field Fire Station Number One was summoned to the Urban League build­ing, at Eleventh and Washington Streets, after receiving an automatic alarm call from a smoke detector at the building.  The fire depart­ment dispatched a three-vehicle investigative response

team to the scene.  Forgas, a 20-year veteran, led the convoy to the scene, accompanied by battalion chief Joel Terrill.  Forgas uti­lized the vehicle's emer­gen­cy sirens and lights while en route to the alarm site.  Forgas was fol­lowed by a fire engine driven by Mike Brida and another fire truck.    

Forgas drove east on Washington Street toward the Urban League build­ing, which is located on the corner of Eleventh and Wash­ing­ton.  Washington Street consists of two eastbound lanes and two west­bound lanes.  Eleventh Street con­sists of two north­

bound lanes and two southbound lanes.  Left-turn lanes exist for all directions at the intersection of Eleventh and Washington.  

As Forgas approached the alarm site, he observed that the occupants of the Urban League building had evacuated the building and were standing on the sidewalk.  Forgas could not see any smoke or flames emanating from the building.  As Forgas neared the intersection, the light for east­bound traffic on Wash­

ing­ton turned red, giving a green light for north-south traffic on Eleventh.  Forgas had no obstruc­tions to his view of north-

south traffic on Eleventh or westbound traffic on Washington as he proceed­ed toward the intersection and the alarm site.  He ob­

served other vehicles on Eleventh Street slowing or stopped as he ap­proached and, after looking left and right, he proceed­ed into the intersection.  While the exact facts relating to Forgas' speed are in dis­pute, it appears that he drove through the inter­

sec­tion between 15 and 40 miles per hour against the red light.  Plain­tiff was south­bound on Eleventh and was pro­ceed­ing through the intersec­tion on a green light when he collided with Forgas.  The other emergency vehicles proceeded to the Urban League building and ultimately determined that it was a false alarm.  

Later that day, Forgas was issued a traffic citation for viola­tion of section 11-306 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-306 (West 1994)) for disobey­ing a red traffic control signal.  Forgas appeared in court a few weeks later to plead not guilty to the citation, but ultimately changed his plea to guilty and received a $100 fine and 30 days of court super­vision.     

Dirk Florence was an independent eyewitness to the colli­sion.  Florence was driving north on Eleventh Street toward Washing­ton, but stopped before entering the intersec­tion because he heard the siren and saw the flashing lights from Forgas' vehi­

cle.  Florence stated that Forgas did not slow or stop before entering the inter­section.  Florence estimat­ed that Forgas was traveling at least 40 miles per hour prior to the colli­sion.  Flor­ence claimed that Forgas ran the red light at a greater speed than plaintiff's vehicle was pro­ceeding on a green light through the intersection.

Joel Terrill, a passenger in Forgas' vehicle, testified at his deposition that Forgas was traveling approximately 15 miles per hour as he entered the intersection and had slowed to about 10 miles per hour in an attempt to avoid the colli­sion.    

Mike Brida was the driver-engineer operating the fire truck directly behind Forgas' vehicle.  Brida ob­served the brake lights acti­vat­ed on Forgas' vehicle as it approached the inter­

section, and he did not see the brake lights go off at any time prior to the colli­sion with plaintiff's truck.      

On August 6, 1996, plaintiff filed his original three-

count complaint against Forgas and the City of Springfield.  Plain­tiff subsequently filed his first-amended complaint on August 31, 1998, stating the following counts:

"Count I: Negligence (Forgas)

Count II: Willful and wanton con­duct 

(Forgas)

Count III: Willful and wanton conduct - 

Respondeat Superior (Spring­field)

Count IV: Assump­tion of duty - Negligence 

(Forgas)

Count V:  Assumption of duty - Negligence 

(Spring­field)." 

Count I alleged that Forgas negligently operated a motor vehicle by disobeying the red light, failing to keep a proper lookout, and failing to yield the right-of-way.  Count II alleged that Forgas' conduct was willful and wanton in that Forgas drove in utter disregard for the safety of others lawful­ly entering the intersection and was guilty of consciously disre­

garding the safety of plaintiff.  In support of these allega­

tions, plaintiff cites Forgas' violation of the fire department's safe operating procedures (Operating Procedures).  The Operating Proce­dures contain inter­nal guidelines which re­quire, in part, that emergency vehicle opera­tors stop and account for all lanes of traffic before enter­ing the inter­sec­tion against a red light.  Plain­tiff also alleges that Forgas proceed­ed against the red light at a speed that endan­gered others lawfully in the inter­

section.  

Count III contains allegations similar to those in count II, but is directed toward the City of Springfield and seeks to impose 
respon­de­at
 
superi­or
 liability.  Counts IV and V are enti­tled "As­sump­tion of Duty" and allege negligence against Forgas and Spring­field for violat­ing the Operating Proce­dures.  

On Septem­ber 17, 1998, defen­dants filed a com­bined motion for summary judgment and motion to dismiss plaintiff's complaint.  Defendants sought summary judgment as to counts I, II, and III based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-

101 
et
 
seq
. (West 1994)).  Defendants moved to dismiss counts IV and V for failure to state a claim.  

On January 12, 1999, the trial court heard argu­ment on the com­bined motion and granted the motion, dismiss­ing the case with preju­dice.  This appeal followed.   

II. ANALYSIS

We first address whether the trial court was correct in granting summary judgment as to counts I, II, and III.  Then, we will deter­mine whether the trial court's dismissal of counts IV and V was appropriate.

A. Summary Judgment

Summary judg­ment is proper where the pleadings, deposi­

tions, admissions, and affida­vits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-

1005(c) (West 1994).  A trial court's grant of summary judgment is subject to 
de
 
novo
 review on appeal.  
Romero v. O'Sullivan
, 302 Ill. App. 3d 1031, 1033, 707 N.E.2d 986, 988 (1999).  Based on a 
de
 
novo
 review of the record, we affirm the trial court's grant of summary judgment as to count I, but reverse as to counts II and III. 

1. 
Count
 
I

Public entities and their firefighting employees are gener­al­ly immune from negligence liability for decisions made and actions taken while operating a motor vehicle in response to an emergency call.  Section 5-106 of the Tort Immunity Act provides: "Except for willful or wanton conduct, 

neither a local public entity, nor a public 

employee acting within the scope of his em-

ployment, is liable for an injury caused by 

the negligent operation of a motor vehicle or 

firefighting or rescue equipment, when res-

ponding to an emergency call, including trans-

portation of a person to a medical facili­ty."  

745 ILCS 10/5-106 (West 1994).

The general policy underlying the limited immunity provided in section 5-106 of the Tort Immunity Act is that emergency vehicle operators should be shielded from person­al liabil­i­ty for actions taken while responding to an emergency.  This court has previous­ly stated that if emergency vehicle opera­

tors were haunted by the possibility of facing personal liability for negligence, driver perfor­mance would be hampered.  See 
Buell v. Oakland Fire Protec­tion District Board
, 237 Ill. App. 3d 940, 944, 605 N.E.2d 618, 621 (1992).

Plaintiff argues that his allegations of negligence in count I are sufficient to survive summary judgment because the provi­sions of the ­Vehicle Code, not the Tort Immunity Act, establish the proper duties of emer­gen­cy vehicle opera­tors like Forgas.  Plaintiff claims that specific provi­sions of the Vehicle Code control over section 5-106 of the Tort Immuni­ty Act (745 ILCS 10/5-106 (West 1994)), which shields a public entity and its employees from negligence liabili­ty.  We disagree.

Plain­tiff cites two sec­tions of the Vehicle Code in support of his argu­ment.  Section 11-205(c)(2) of the Vehicle Code provides that the driver of an emer­gency vehicle may proceed past a stop signal, "but only after slowing down as may be required and necessary for safe opera­tion."  625 ILCS 5/11-

205(c)(2) (West 1994).  Section 11-205(e) also states: 

"The foregoing provi­sions do not relieve 

the driver of an autho­rized emergency vehicle 

from the duty of driving with due regard for 

the safety of all per­sons, nor do such pro-

visions protect the driver from the conse-

­quences of his reckless disre­gard for the 

safety of others."  625 ILCS 5/11-205(e) 

(West 1994).  

Section 11-907 of the Vehicle Code governs opera­tion of vehi­cles and streetcars on ap­proach of authorized emer­gency vehi­cles.  This section estab­lishes that drivers shall yield the right-of-

way to emergency vehicles, but specif­i­cal­ly states that it "shall not operate to relieve the driver of an authorized emer­gency vehicle from the duty to drive with due regard for the safety of all persons using the highway."  625 ILCS 5/11-907(b) (West 1994).    

These provisions apply to Forgas as an emer­gen­cy vehicle operator.  Howev­er, the issue before us is whether the Vehicle Code supersedes the provisions of the Tort Immunity Act.   The Fifth District Appellate Court has held that the Vehicle Code is more specific than the Tort Immunity Act; the Vehicle Code contains express provisions establishing a duty and standard of care governing the operation of emergency vehicles; and the driver of an emergency vehicle can be held liable for negli­gence arising out of a breach of that duty.  
Bradshaw v. City of Metropolis
, 293 Ill. App. 3d 389, 395, 688 N.E.2d 332, 335 (1997)
.  

The Second District Appellate Court recently disagreed with 
Bradshaw
, finding that the Vehicle Code and the Tort Immu

nity Act are not in conflict because the Vehicle Code applies to all drivers of emergency vehicles while the Tort Immunity Act applies only to public employees.  
Carter v. DuPage County Sheriff
, 304 Ill. App. 3d 443, 450, 710 N.E.2d 1263, 1268 (1999).  The 
Carter
 court noted that each statute stands "'in its own sphere,'" and the immunities provided by the Vehicle Code and the Tort Immunity Act serve different purposes.  
Carter
, 304 Ill. App. 3d at 450, 710 N.E.2d at 1267-68, quoting 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 392, 712 N.E.2d 298, 304 (1998).

We agree with the reasoning in 
Carter
 and find no conflict between the Vehicle Code and the Tort Immunity Act as applied to this case.  Contrary to 
Bradshaw
, we find that Forgas, as an emergency vehicle driver, is not subject to negligence liability based upon the provisions of the Vehicle Code. 

Sections 11-205 and 11-907 of the Vehicle Code (625 ILCS 5/11-205, 11-907 (West 1994)) provide certain privileges both to public and private employ­ees who operate emergency vehicles.  The Tort Immunity Act, on the other hand, does not apply to private employees, but provides immunity to public employees (absent willful and wanton conduct).  Stat­utes relating to the same subject matter should be construed so that effect may be given to the provisions of each, if reason­able.  
Henrich
, 186 Ill. 2d at 392, 712 N.E.2d at 304.  Under the plain language of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employ­ees like Forgas (745 ILCS 10/5-106 (West 1994)).  Thus, count I, alleging ordinary negligence against Forgas, was proper­ly dis­posed of by summary judgment.      

        2. 
Counts
 
II
 
and
 
III
 

We now turn our attention to plaintiff's counts II and III, alleging willful and wanton conduct.  Under the Tort Immuni­

ty Act, ­a public entity and its public employee are insu­lated from liability (1) if the employee was acting within the scope of his employ­ment, (2) while operating firefighting or rescue equip­

ment, (3) when responding to an emergency call, and (4) if the employee's conduct was not willful and wanton.  745 ILCS 10/5-106 (West 1994).  

The parties do not dis­put­e that Forgas was acting within the scope of his employ­ment and was operating firefighting or rescue equip­ment on November 1, 1995, when he was responding to the alarm at the Urban League building.  Plaintiff disputes whether Forgas was re­spond­ing to an "emer­gency call" and whether his conduct, leading up to the collision, was willful and wanton.     a. Forgas Was Responding to an "Emergency Call"  

Plaintiff argues that a materi­al question of fact exists as to whether Forgas was responding to an "emergency call" at the time of the collision.  The phrase "emergency call" is not defined in the Tort Immuni­ty Act.  Howev­er, when inter­preting section 5-106, we will give this statutory language its plain and ordinary meaning.  
Advincula v. United Blood Servic­es
, 176 Ill. 2d 1, 17, 678 N.E.2d 1009, 1017 (1996).  The term "emer­gen­cy" is commonly defined as an "urgent need for assistance or relief."  Merriam-Webster's Collegiate Dictio­nary 377 (10th ed. 1998).  Consistent with this commonly understood definition, the driver train­ing manual for emer­gen­cy service organi­za­tions provided to Forgas and other members of the Spring­field fire department defines emergen­cy as follows:  "a situation in which there is a high probabili­ty of death or serious injury to an individu­al, or signifi­cant property loss, and action by an Emergency Vehicle operator may reduce the seri­ous­ness of the situation."  Plain­tiff argues that a jury could find that no emer­gen­cy existed because it was not unusual for an automatic dial-in alarm, like the one received here, to result in a false alarm.  One month prior to the acci­dent, the Urban League building had dialed in a false alarm.  

The fire depart­ment devel­oped a re­sponse procedure for dial-in alarms whereby a fully equipped investi­ga­tive re­sponse team is sent to the scene and then backup support will be sum

moned if necessary.  Plaintiff argues that using this type of investiga­tive response system is evidence that Forgas was not responding to an emer­gen­cy call at the time of the collision.  Plaintiff also emphasizes the fact that this particular alarm was a false alarm.   

As a fallback posi­tion, plain­tiff urges us to find that even if an emer­gency call existed initial­ly, it ceased when Forgas ap­proached the Urban League build­ing, saw the building occu­pants safely on the sidewalk, and did not see any fire or smoke emanating from the building.  

We agree with the general proposi­tion that emergen­cy situa­tions can become nonemergen­cies based on a change in facts or circum­stances.  See 
Lenz v. Julian
, 276 Ill. App. 3d 66, 657 N.E.2d 712 (1995) (no emergency where state trooper knew chase of sus­pect had been abandoned and officer did not know the location of the suspect, but intended to cross state lines to continue pursuit he was not authorized to under­take).  However, such a situation is not pre­sented here. 

We reject plaintiff's suggestion that Forgas was not re­sponding to an emergency call at the time of the collision.  The plain language of the statute and the definitions dis­cussed above lead us to conclude that an automatic alarm direct­ed to the fire depart­ment is suffi­cient to consti­tute an "emer­gen­cy call" as set forth in the Tort Immunity Act.  This was not a situa­tion where the fire depart­ment was called to rescue a cat from a tree.  They were dispatched to fight a fire.  The fact that the alarm turned out to be a false alarm is irrelevant to our analysis.  Nothing in the record indi­cates that Forgas was not respond­ing to a legitimate emergency call for help at the Urban League build

ing, where a high proba­bility of serious injury or signifi­cant proper­ty loss existed.  

We also disagree with plaintiff's fallback position.  A dial-in alarm is an emergen­cy call that is not trans­formed to a nonemergency once a firefighter ap­proach­es the alarm site and does not see smoke or flames.  As such, we find no materi­al facts in dispute that would support a finding that Forgas was not re­

spond­ing to an emergency call at the time of the accident.  

b. Willful and Wanton Conduct Under the Tort Immunity Act

The Tort Immunity Act states: 

"'Willful and wanton conduct' as used 

in this Act means a course of action which 

shows an actual or deliberate intention to 

cause harm or which, if not intention­al, 

shows an utter indiffer­ence to or conscious 

disre­gard for the safety of others or their 

proper­ty."  745 ILCS 10/1-210 (West 1994).  

Our supreme court has stressed that whether conduct is willful and wanton is ultimately a fact question.  
Calloway v. Kinkelaar
, 168 Ill. 2d 312, 326, 659 N.E.2d 1322, 1329 (1995); 
Doe v. Calumet City
, 161 Ill. 2d 374, 390, 641 N.E.2d 498, 506 (1994).  A court may, howev­er, hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other contrary conclusion can be drawn.  
Urban v. Village of Lincolnshire
, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683, 688-89 (1995).  We must determine whether the trial court judge was correct in holding that Forgas' actions were not willful and wanton, as a matter of law.  

Willful and wanton conduct is sometimes referred to as aggravated negligence, falling some­where between ordi­nary negli­gence and inten­tional acts.  W. Keeton, Prosser & Keeton on Torts §34, at 212 (5th ed. 1984) (hereinafter Keeton).  Under the facts of one case, willful and wanton miscon­duct may be only degrees more than ordinary negli­gence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing.  
Ziarko v. Soo Line R.R. Co.
, 161 Ill. 2d 267, 275-76, 641 N.E.2d 402, 406 (1994).

Willful and wanton conduct tends to take on the aspect of highly unreason­able conduct, involving an extreme departure from ordi­nary care, in a situation where a high degree of danger is apparent.  Keeton §34, at 214 .  Our supreme court has charac­

terized willful and wanton conduct as:

"'a failure, after knowledge of impending dan-

ger, to exercise ordinary care to prevent'

the danger, or a 'failure to discover the 

danger through *** carelessness when it 

could have been discov­ered by the exercise of 

ordinary care.'"  
Ziarko
, 161 Ill. 2d at 274, 

641 N.E.2d at 406, quoting 
Schneiderman v.

Inter­state Transit Lines, Inc.
, 394 Ill. 569, 

583, 69 N.E.2d 293, 300 (1946).

In grant­ing summary judg­ment, the trial court relied upon 
Hampton v. Cashmore
, 265 Ill. App. 3d 23, 637 N.E.2d 776 (1994), finding it "on point" and "instructive."  In 
Hampton
, an ambu­lance was trans­porting a passen­ger to the hospi­tal and collided with a truck.  The deposi­tion testimony of the parties and witnesses to the colli­sion was in conflict regarding a number of issues.  One eyewit­ness testi­fied that the ambulance driver entered the intersection against a red light at approxi­mately 30 to 35 miles per hour.  Another eyewit­ness claimed he saw the ambulance slow before entering the intersec­tion against the red light.  A third eyewit­ness testified that the ambulance was moving at a high rate of speed; however, it entered the intersec­

tion with a green light.  
Hampton
, 265 Ill. App. 3d at 27-29, 637 N.E.2d at 779-80.  The ambulance driver testi­fied in his deposi­

tion that he ap­proached the inter­section at 35 miles per hour, saw the light was red, and slowed to 10 to 15 miles per hour.  He reached the intersection, slowed down, looked both ways, and proceeded through thinking it was clear of traffic.  
Hampton
, 265 Ill. App. 3d at 28, 637 N.E.2d at 780.  The trial court granted summary judgment and the second district affirmed.   

The 
Hampton
 court viewed the evidence in the light most favor­able to the plaintiff and found that the ambulance driver's conduct could be character­ized as negligence; however, as a matter of law, the record contained insufficient evidence to raise a question of material fact as to whether the ambu­lance driver willful­ly and wantonly failed to slow upon reaching the intersec­tion or failed to maintain a proper lookout for other traffic.  
Hampton
, 265 Ill. App. 3d at 31, 637 N.E.2d at 782.  The court found no evi­dence, circum­stan­tial or other­wise, in the record that the defendant proceeded with an utter indif­ference to, or in con­scious disre­gard for, plaintiff's safety.  
Hampton
, 265 Ill. App. 3d at 31, 637 N.E.2d at 782.  The court could not find any evi­dence in the record that the defen­dant had notice of a sub­stan­tial danger and failed to exercise reasonable precau

tions under the circum­stanc­es.  
Hampton
, 265 Ill. App. 3d at 32, 637 N.E.2d at 782.  

We disagree with the decision in 
Hampton
.  
Hampton
 could be interpreted as holding that the driver of an emergency vehicle may proceed through an intersection against a red light anywhere between 10 and 35 miles per hour without fear of civil liability.  We conclude that a jury could find such conduct to be in "conscious disregard for the safety of others or their prop

erty" under the Tort Immunity Act (745 ILCS 10/1-210 (West 1994)).  Similar­ly, we conclude that the trial court in the case at bar erred in grant­ing summary judg­ment.  In the present case, several ques­tions of fact pre­clude summary judgment in defen

dants' favor.  The record contains a number of versions of what happened on November 1, 1995.

Forgas testified that he stopped and checked the intersec­tion before proceeding against the red light.  Forgas also testi­fied that he looked straight ahead as he entered the inter­section and did not look side to side on Eleventh Street for possi­ble oncom­ing traffic.  Joe Terrill testi­fied that Forgas never came to a com­plete stop before entering the inter­section and proceeded into the intersec­tion at approx­i­mate­ly 15 miles per hour.  Dirk Florence testi­fied that Forgas did not slow or make any attempt to stop before entering the inter­sec­tion and was travel­ing at approxi­mately 30 to 40 miles per hour as he entered the intersec­tion.  

Material factual issues are in dispute regard­ing Forgas' actions leading up to the collision.  The trier of fact should be presented with all the facts related to this collision and determine whether Forgas con­scious­ly made a deci­sion to proceed against the red light into a crowded inter­section without any regard for the safety of other drivers.  Such a finding would consti­tute willful and wanton conduct, removing Forgas and the City of Springfield from the protec­tion of the Tort Immunity Act.  This is a question for the jury and, based on the facts pre

sented, should not have been decided on summary judgment.  

Plaintiff also argues that Forgas' guilty plea to the violation of section 11-306 of the Vehicle Code (625 ILCS 5/11-

306 (West 1994)) for "disobeying traffic control signal red" is evidence that supports a finding of willful and wanton conduct.  Forgas pleaded guilty to disregarding the red light and was fined $100 and put under supervision.  Plain­tiff claims that, by plead­

ing guilty, Forgas admit­ted he did not reduce his speed enough to safely operate the vehicle and that this is evidence of a con­

scious disregard for the safety of others.  

The Illinois courts have held that traffic 
convictions
 are not necessarily admissible in later civil proceedings as proof of the facts that act as a basis for the conviction.  
Thurmond v. Monroe
, 235 Ill. App. 3d 281, 285-89, 601 N.E.2d 1048, 1051-53 (1992).  Here, however, Forgas pleaded guilty to the traffic of­fense.  Guilty pleas to traffic offenses have been admitted in subsequent civil proceed­ings as admissions.  
Hartigan v. Robert­son
, 87 Ill. App. 3d 732, 738, 409 N.E.2d 366, 371 (1980).  Addi­tion­ally, stipulating to facts leading to an order of super­vision fol­lowed by an order of expungement have also been held admissi­ble in a subse­quent civil case as an admission of a party oppo­nent.  
Batterton v. Thurman
, 105 Ill. App. 3d 798, 801-

02, 434 N.E.2d 1174, 1176-77 (1982).

Defendants argue that Forgas' guilty plea should not be used against them because Forgas simply pleaded guilty because he was not represented by an attorney.  Forgas claims he was not aware that pleading guilty to the traffic citation would be considered an admission in a civil suit.  Commentators have noted the inequity in a rule that defendants, properly advised, permit a judgment to the traffic offense to be entered against them after a plea of not guilty, while those ignorant of the conse

quences simply plead guilty.  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.4 (7th ed. 1999).  Howev­er, when a person is in­volved in an automo­bile acci­dent and is issued a traffic citation as a result, the person must realize that civil litiga­tion is a very real possi­bility and that the guilty plea to the traffic charge could reflect adverse­ly upon him in a subse­quent civil proceed­ing.  
Wright v. Stokes
, 167 Ill. App. 3d 887, 892, 522 N.E.2d 308, 311 (1988).  Forgas' expla­nation for pleading guilty may also be consid­ered by the jury.  
Barnes v. Croston
, 108 Ill. App. 2d 182, 184-85, 247 N.E.2d 1, 2-3 (1969).  

While Forgas' guilty plea is in no way conclu­sive of willful and wanton conduct, we consider it in reviewing the trial court's grant of summary judgment and find that it pro­vides factual support for plaintiff's allega­tions in counts II and III.  The jury will decide whether the plea, in conjunction with other evidence surrounding the collision, justifies a finding that Forgas' conduct was willful and wanton. 

Therefore, looking at the record in the light most favor­able to plain­tiff, material issues of fact are in dispute whether Forgas' "course of action *** show[ed] an utter indif­fer­

ence to or conscious disre­gard for the safety of others or their proper­ty" under the Tort Immunity Act (745 ILCS 10/1-210 (West 1994)), and we reverse summary judgment on counts II and III.     

B. Dismissal of Counts IV and V

In counts IV and V of the first-amended complaint, plain­tiff alleges that Forgas and the City of Springfield (through Forgas as its employee) failed to exer­cise due care in the perfor­mance of the Operat­ing Proce­dures of the Springfield fire depart­ment while operating an emergency vehicle, and, as a result of Forgas' negli­gence, plain­tiff suffered injuries.  The Operating Procedures require emergency vehicle operators to stop and account for all lanes of traffic before entering the inter

section against a red light.  Essentially, plaintiff argues that by implementing the Operating Procedures, defendants assumed a duty to refrain from 
negligently
 operating emergency vehicles and in essence waived the protections granted them in the Tort Immunity Act. 

The trial court dis­missed counts IV and V for failure to state a cause of action.  Our review of that decision is 
de
 
novo
.  
AG Farms, Inc. v. American Premier Underwriters, Inc.
, 296 Ill. App. 3d 684, 688, 695 N.E.2d 882, 886 (1998).  

Whether a legal duty exists is a ques­tion of law and is deter­mined by reference to whether the parties stood in such a rela­tionship to each other that the law imposes an obliga­tion on one to act for the protec­tion of the other.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 238, 665 N.E.2d 1260, 1272 (1996).  In the end, the law must say what is legally required.  
Rhodes
, 172 Ill. 2d at 238, 665 N.E.2d at 1272.  We hold that the Springfield fire department's implementa­tion of the Operat­ing Proce­dures does not consti­tute an assump­tion of duty that alters the duty owed to plain­tiff.

We have already established that defendants' liability will derive, if at all, from a violation of section 5-106 of the Tort Immunity Act (745 ILCS 10/5-106 (West 1994)), which requires a finding of willful and wanton con­duct.  Internal rules and procedures, like the Operating Procedures, do not impose a legal duty upon munici­pal entities and their employees.  See 
Dezort v. Village of Hinsdale
, 35 Ill. App. 3d 703, 708, 342 N.E.2d 468, 472 (1976); see also 
Blankenship v. Peoria Park Dis­trict
, 269 Ill. App. 3d 416, 422, 647 N.E.2d 287, 291 (1994) (park dis

trict's inter­nal rules requir­ing one lifeguard to remain on duty during adult swim did not create a legal duty to have one life

guard on duty); 
Fillpot v. Midway Airlines, Inc.
, 261 Ill. App. 3d 237, 244, 633 N.E.2d 237, 242 (1994) (airline's policy manual requir­ing clearing of walkways did not create such a duty).

Plaintiff's assumption-of-duty counts based on negli­

gence do not state a claim for relief against the defendants because the Operat­ing Procedures do not constitute a voluntary assump­tion of duty to stop before entering the intersection when responding to an emergency call.  The trial court's dismissal of counts IV and V was proper.  

III. CONCLUSION

For the reasons stated, we affirm summary judgment on count I and the dismissal of counts IV and V, but reverse summary judgment on counts II and III and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

KNECHT, P.J., and STEIGMANN, J., concur.