SHAWN YOUNG, Plaintiff-Appellant, v. PAUL FORGAS, JR., *et al.*, Defendants-Appellees.

Fourth District    No. 4—99—0126

Argued August 18, 1999.—Opinion filed November 8, 1999.

Pat Ducey (argued), of Ducey & Associates, P.C., of Belleville, for appellant.

Theodore R. Schullian (argued), Assistant Corporation Counsel, of Springfield, for appellees.

JUSTICE COOK delivered the opinion of the court:

On November 1, 1995, plaintiff, Shawn Young, was injured in a

collision involving his pickup truck and a City of Springfield fire department vehicle driven by defendant Paul Forgas. The accident occurred while Forgas and other emergency response vehicles were responding to a fire alarm at the Urban League building. Plaintiff filed suit against Forgas and the City of Springfield. Defendants moved to dismiss some counts and moved for summary judgment on others pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1994)). The trial court granted defendants' motion and plaintiff appeals. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

At approximately 2:30 p.m. on November 1, 1995, Springfield Fire Station Number One was summoned to the Urban League building, at Eleventh and Washington Streets, after receiving an automatic alarm call from a smoke detector at the building. The fire department dispatched a three-vehicle investigative response team to the scene. Forgas, a 20-year veteran, led the convoy to the scene, accompanied by battalion chief Joel Terrill. Forgas utilized the vehicle's emergency sirens and lights while en route to the alarm site. Forgas was followed by a fire engine driven by Mike Brida and another fire truck.

Forgas drove east on Washington Street toward the Urban League building, which is located on the corner of Eleventh and Washington. Washington Street consists of two eastbound lanes and two westbound lanes. Eleventh Street consists of two northbound lanes and two southbound lanes. Left-turn lanes exist for all directions at the intersection of Eleventh and Washington.

As Forgas approached the alarm site, he observed that the occupants of the Urban League building had evacuated the building and were standing on the sidewalk. Forgas could not see any smoke or flames emanating from the building. As Forgas neared the intersection, the light for eastbound traffic on Washington turned red, giving a green light for north-south traffic on Eleventh. Forgas had no obstructions to his view of north-south traffic on Eleventh or westbound traffic on Washington as he proceeded toward the intersection and the alarm site. He observed other vehicles on Eleventh Street slowing or stopped as he approached and, after looking left and right, he proceeded into the intersection. While the exact facts relating to Forgas' speed are in dispute, it appears that he drove through the intersection between 15 and 40 miles per hour against the red light. Plaintiff was southbound on Eleventh and was proceeding through the intersection on a green light when he collided with Forgas. The other emergency vehicles proceeded to the Urban League building and ultimately determined that it was a false alarm.

Later that day, Forgas was issued a traffic citation for violation of section 11—306 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—306 (West 1994)) for disobeying a red traffic control signal. Forgas appeared in court a few weeks later to plead not guilty to the citation, but ultimately changed his plea to guilty and received a $100 fine and 30 days of court supervision.

Dirk Florence was an independent eyewitness to the collision. Florence was driving north on Eleventh Street toward Washington, but stopped before entering the intersection because he heard the siren and saw the flashing lights from Forgas' vehicle. Florence stated that Forgas did not slow or stop before entering the intersection. Florence estimated that Forgas was traveling at least 40 miles per hour prior to the collision. Florence claimed that Forgas ran the red light at a greater speed than plaintiff's vehicle was proceeding on a green light through the intersection.

Joel Terrill, a passenger in Forgas' vehicle, testified at his deposition that Forgas was traveling approximately 15 miles per hour as he entered the intersection and had slowed to about 10 miles per hour in an attempt to avoid the collision.

Mike Brida was the driver-engineer operating the fire truck directly behind Forgas' vehicle. Brida observed the brake lights activated on Forgas' vehicle as it approached the intersection, and he did not see the brake lights go off at any time prior to the collision with plaintiff's truck.

On August 6, 1996, plaintiff filed his original three-count complaint against Forgas and the City of Springfield. Plaintiff subsequently filed his first-amended complaint on August 31, 1998, stating the following counts:

"Count I: Negligence (Forgas)

Count II: Willful and wanton conduct (Forgas)

Count III: Willful and wanton conduct—Respondeat Superior (Springfield)

Count IV: Assumption of duty—Negligence (Forgas)

Count V: Assumption of duty—Negligence (Springfield)."

Count I alleged that Forgas negligently operated a motor vehicle by disobeying the red light, failing to keep a proper lookout, and failing to yield the right-of-way. Count II alleged that Forgas' conduct was willful and wanton in that Forgas drove in utter disregard for the safety of others lawfully entering the intersection and was guilty of consciously disregarding the safety of plaintiff. In support of these allegations, plaintiff cites Forgas' violation of the fire department's safe operating procedures (Operating Procedures). The Operating Proce-

dures contain internal guidelines which require, in part, that emergency vehicle operators stop and account for all lanes of traffic before entering the intersection against a red light. Plaintiff also alleges that Forgas proceeded against the red light at a speed that endangered others lawfully in the intersection.

Count III contains allegations similar to those in count II, but is directed toward the City of Springfield and seeks to impose *respondeat superior* liability. Counts IV and V are entitled "Assumption of Duty" and allege negligence against Forgas and Springfield for violating the Operating Procedures.

On September 17, 1998, defendants filed a combined motion for summary judgment and motion to dismiss plaintiff's complaint. Defendants sought summary judgment as to counts I, II, and III based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1994)). Defendants moved to dismiss counts IV and V for failure to state a claim.

On January 12, 1999, the trial court heard argument on the combined motion and granted the motion, dismissing the case with prejudice. This appeal followed.

## II. ANALYSIS

We first address whether the trial court was correct in granting summary judgment as to counts I, II, and III. Then, we will determine whether the trial court's dismissal of counts IV and V was appropriate.

### A. Summary Judgment

■ Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). A trial court's grant of summary judgment is subject to *de novo* review on appeal. *Romero v. O'Sullivan*, 302 Ill. App. 3d 1031, 1033, 707 N.E.2d 986, 988 (1999). Based on a *de novo* review of the record, we affirm the trial court's grant of summary judgment as to count I, but reverse as to counts II and III.

### 1. *Count I*

■ Public entities and their firefighting employees are generally immune from negligence liability for decisions made and actions taken while operating a motor vehicle in response to an emergency call. Section 5—106 of the Tort Immunity Act provides:

"Except for willful or wanton conduct, neither a local public

entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5—106 (West 1994).

The general policy underlying the limited immunity provided in section 5—106 of the Tort Immunity Act is that emergency vehicle operators should be shielded from personal liability for actions taken while responding to an emergency. This court has previously stated that if emergency vehicle operators were haunted by the possibility of facing personal liability for negligence, driver performance would be hampered. See *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 944, 605 N.E.2d 618, 621 (1992).

Plaintiff argues that his allegations of negligence in count I are sufficient to survive summary judgment because the provisions of the Vehicle Code, not the Tort Immunity Act, establish the proper duties of emergency vehicle operators like Forgas. Plaintiff claims that specific provisions of the Vehicle Code control over section 5—106 of the Tort Immunity Act (745 ILCS 10/5—106 (West 1994)), which shields a public entity and its employees from negligence liability. We disagree.

■ Plaintiff cites two sections of the Vehicle Code in support of his argument. Section 11—205(c)(2) of the Vehicle Code provides that the driver of an emergency vehicle may proceed past a stop signal, "but only after slowing down as may be required and necessary for safe operation." 625 ILCS 5/11—205(c)(2) (West 1994). Section 11—205(e) also states:

"The foregoing provisions do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others." 625 ILCS 5/11—205(e) (West 1994).

Section 11—907 of the Vehicle Code governs operation of vehicles and streetcars on approach of authorized emergency vehicles. This section establishes that drivers shall yield the right-of-way to emergency vehicles, but specifically states that it "shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway." 625 ILCS 5/11—907(b) (West 1994).

These provisions apply to Forgas as an emergency vehicle operator. However, the issue before us is whether the Vehicle Code supersedes the provisions of the Tort Immunity Act.

The Fifth District Appellate Court has held that the Vehicle Code

is more specific than the Tort Immunity Act; the Vehicle Code contains express provisions establishing a duty and standard of care governing the operation of emergency vehicles; and the driver of an emergency vehicle can be held liable for negligence arising out of a breach of that duty. *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389, 395, 688 N.E.2d 332, 335 (1997).

The Second District Appellate Court recently disagreed with *Bradshaw*, finding that the Vehicle Code and the Tort Immunity Act are not in conflict because the Vehicle Code applies to all drivers of emergency vehicles while the Tort Immunity Act applies only to public employees. *Carter v. Du Page County Sheriff*, 304 Ill. App. 3d 443, 450, 710 N.E.2d 1263, 1268 (1999). The *Carter* court noted that each statute stands " 'in its own sphere,' " and the immunities provided by the Vehicle Code and the Tort Immunity Act serve different purposes. *Carter*, 304 Ill. App. 3d at 450, 710 N.E.2d at 1267-68, quoting *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 392, 712 N.E.2d 298, 304 (1998).

■ We agree with the reasoning in *Carter* and find no conflict between the Vehicle Code and the Tort Immunity Act as applied to this case. Contrary to *Bradshaw*, we find that Forgas, as an emergency vehicle driver, is not subject to negligence liability based upon the provisions of the Vehicle Code.

Sections 11—205 and 11—907 of the Vehicle Code (625 ILCS 5/11—205, 11—907 (West 1994)) provide certain privileges both to public and private employees who operate emergency vehicles. The Tort Immunity Act, on the other hand, does not apply to private employees, but provides immunity to public employees (absent willful and wanton conduct). Statutes relating to the same subject matter should be construed so that effect may be given to the provisions of each, if reasonable. *Henrich*, 186 Ill. 2d at 392, 712 N.E.2d at 304. Under the plain language of the Tort Immunity Act, the legislature has chosen to grant immunity from negligence liability to public employees like Forgas (745 ILCS 10/5—106 (West 1994)). Thus, count I, alleging ordinary negligence against Forgas, was properly disposed of by summary judgment.

## 2. *Counts II and III*

■ We now turn our attention to plaintiff's counts II and III, alleging willful and wanton conduct. Under the Tort Immunity Act, a public entity and its public employee are insulated from liability (1) if the employee was acting within the scope of his employment, (2) while operating firefighting or rescue equipment, (3) when responding to an emergency call, and (4) if the employee's conduct was not willful and wanton. 745 ILCS 10/5—106 (West 1994).

The parties do not dispute that Forgas was acting within the scope of his employment and was operating firefighting or rescue equipment on November 1, 1995, when he was responding to the alarm at the Urban League building. Plaintiff disputes whether Forgas was responding to an "emergency call" and whether his conduct, leading up to the collision, was willful and wanton.

### a. Forgas Was Responding to an "Emergency Call"

■ Plaintiff argues that a material question of fact exists as to whether Forgas was responding to an "emergency call" at the time of the collision. The phrase "emergency call" is not defined in the Tort Immunity Act. However, when interpreting section 5—106, we will give this statutory language its plain and ordinary meaning. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17, 678 N.E.2d 1009, 1017 (1996). The term "emergency" is commonly defined as an "urgent need for assistance or relief." Merriam-Webster's Collegiate Dictionary 377 (10th ed. 1998). Consistent with this commonly understood definition, the driver training manual for emergency service organizations provided to Forgas and other members of the Springfield fire department defines emergency as follows: "a situation in which there is a high probability of death or serious injury to an individual, or significant property loss, and action by an Emergency Vehicle operator may reduce the seriousness of the situation." Plaintiff argues that a jury could find that no emergency existed because it was not unusual for an automatic dial-in alarm, like the one received here, to result in a false alarm. One month prior to the accident, the Urban League building had dialed in a false alarm.

The fire department developed a response procedure for dial-in alarms whereby a fully equipped investigative response team is sent to the scene and then backup support will be summoned if necessary. Plaintiff argues that using this type of investigative response system is evidence that Forgas was not responding to an emergency call at the time of the collision. Plaintiff also emphasizes the fact that this particular alarm was a false alarm.

As a fallback position, plaintiff urges us to find that even if an emergency call existed initially, it ceased when Forgas approached the Urban League building, saw the building occupants safely on the sidewalk, and did not see any fire or smoke emanating from the building.

■ We agree with the general proposition that emergency situations can become nonemergencies based on a change in facts or circumstances. See *Lenz v. Julian*, 276 Ill. App. 3d 66, 657 N.E.2d 712 (1995) (no emergency where state trooper knew chase of suspect had

been abandoned and officer did not know the location of the suspect, but intended to cross state lines to continue pursuit he was not authorized to undertake). However, such a situation is not presented here.

We reject plaintiff's suggestion that Forgas was not responding to an emergency call at the time of the collision. The plain language of the statute and the definitions discussed above lead us to conclude that an automatic alarm directed to the fire department is sufficient to constitute an "emergency call" as set forth in the Tort Immunity Act. This was not a situation where the fire department was called to rescue a cat from a tree. They were dispatched to fight a fire. The fact that the alarm turned out to be a false alarm is irrelevant to our analysis. Nothing in the record indicates that Forgas was not responding to a legitimate emergency call for help at the Urban League building, where a high probability of serious injury or significant property loss existed.

We also disagree with plaintiff's fallback position. A dial-in alarm is an emergency call that is not transformed to a nonemergency once a firefighter approaches the alarm site and does not see smoke or flames. As such, we find no material facts in dispute that would support a finding that Forgas was not responding to an emergency call at the time of the accident.

### b. Willful and Wanton Conduct Under the Tort Immunity Act

The Tort Immunity Act states:

" 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1994).

Our supreme court has stressed that whether conduct is willful and wanton is ultimately a fact question. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326, 659 N.E.2d 1322, 1329 (1995); *Doe v. Calumet City*, 161 Ill. 2d 374, 390, 641 N.E.2d 498, 506 (1994). A court may, however, hold as a matter of law that a public employee's actions did not amount to willful and wanton conduct when no other contrary conclusion can be drawn. *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094, 651 N.E.2d 683, 688-89 (1995). We must determine whether the trial court judge was correct in holding that Forgas' actions were not willful and wanton, as a matter of law.

Willful and wanton conduct is sometimes referred to as aggravated negligence, falling somewhere between ordinary negligence and intentional acts. W. Keeton, Prosser & Keeton on Torts § 34, at 212 (5th ed. 1984) (hereinafter Keeton). Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and

wanton acts may be only degrees less than intentional wrongdoing. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76, 641 N.E.2d 402, 406 (1994).

Willful and wanton conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. Keeton § 34, at 214 . Our supreme court has characterized willful and wanton conduct as:

> " 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' " *Ziarko*, 161 Ill. 2d at 274, 641 N.E.2d at 406, quoting *Schneiderman v. Interstate Transit Lines, Inc.*, 394 Ill. 569, 583, 69 N.E.2d 293, 300 (1946).

In granting summary judgment, the trial court relied upon *Hampton v. Cashmore*, 265 Ill. App. 3d 23, 637 N.E.2d 776 (1994), finding it "on point" and "instructive." In *Hampton*, an ambulance was transporting a passenger to the hospital and collided with a truck. The deposition testimony of the parties and witnesses to the collision was in conflict regarding a number of issues. One eyewitness testified that the ambulance driver entered the intersection against a red light at approximately 30 to 35 miles per hour. Another eyewitness claimed he saw the ambulance slow before entering the intersection against the red light. A third eyewitness testified that the ambulance was moving at a high rate of speed; however, it entered the intersection with a green light. *Hampton*, 265 Ill. App. 3d at 27-29, 637 N.E.2d at 779-80. The ambulance driver testified in his deposition that he approached the intersection at 35 miles per hour, saw the light was red, and slowed to 10 to 15 miles per hour. He reached the intersection, slowed down, looked both ways, and proceeded through thinking it was clear of traffic. *Hampton*, 265 Ill. App. 3d at 28, 637 N.E.2d at 780. The trial court granted summary judgment and the second district affirmed.

The *Hampton* court viewed the evidence in the light most favorable to the plaintiff and found that the ambulance driver's conduct could be characterized as negligence; however, as a matter of law, the record contained insufficient evidence to raise a question of material fact as to whether the ambulance driver willfully and wantonly failed to slow upon reaching the intersection or failed to maintain a proper lookout for other traffic. *Hampton*, 265 Ill. App. 3d at 31, 637 N.E.2d at 782. The court found no evidence, circumstantial or otherwise, in the record that the defendant proceeded with an utter indifference to, or in conscious disregard for, plaintiff's safety. *Hampton*, 265 Ill. App. 3d at 31, 637 N.E.2d at 782. The court could not find any evidence in

the record that the defendant had notice of a substantial danger and failed to exercise reasonable precautions under the circumstances. *Hampton*, 265 Ill. App. 3d at 32, 637 N.E.2d at 782.

■ We disagree with the decision in *Hampton*. *Hampton* could be interpreted as holding that the driver of an emergency vehicle may proceed through an intersection against a red light anywhere between 10 and 35 miles per hour without fear of civil liability. We conclude that a jury could find such conduct to be in "conscious disregard for the safety of others or their property" under the Tort Immunity Act (745 ILCS 10/1—210 (West 1994)). Similarly, we conclude that the trial court in the case at bar erred in granting summary judgment. In the present case, several questions of fact preclude summary judgment in defendants' favor. The record contains a number of versions of what happened on November 1, 1995.

Forgas testified that he stopped and checked the intersection before proceeding against the red light. Forgas also testified that he looked straight ahead as he entered the intersection and did not look side to side on Eleventh Street for possible oncoming traffic. Joe Terrill testified that Forgas never came to a complete stop before entering the intersection and proceeded into the intersection at approximately 15 miles per hour. Dirk Florence testified that Forgas did not slow or make any attempt to stop before entering the intersection and was traveling at approximately 30 to 40 miles per hour as he entered the intersection.

Material factual issues are in dispute regarding Forgas' actions leading up to the collision. The trier of fact should be presented with all the facts related to this collision and determine whether Forgas consciously made a decision to proceed against the red light into a crowded intersection without any regard for the safety of other drivers. Such a finding would constitute willful and wanton conduct, removing Forgas and the City of Springfield from the protection of the Tort Immunity Act. This is a question for the jury and, based on the facts presented, should not have been decided on summary judgment.

Plaintiff also argues that Forgas' guilty plea to the violation of section 11—306 of the Vehicle Code (625 ILCS 5/11—306 (West 1994)) for "disobeying traffic control signal red" is evidence that supports a finding of willful and wanton conduct. Forgas pleaded guilty to disregarding the red light and was fined $100 and put under supervision. Plaintiff claims that, by pleading guilty, Forgas admitted he did not reduce his speed enough to safely operate the vehicle and that this is evidence of a conscious disregard for the safety of others.

The Illinois courts have held that traffic *convictions* are not necessarily admissible in later civil proceedings as proof of the facts that act

as a basis for the conviction. *Thurmond v. Monroe*, 235 Ill. App. 3d 281, 285-89, 601 N.E.2d 1048, 1051-53 (1992). Here, however, Forgas pleaded guilty to the traffic offense. Guilty pleas to traffic offenses have been admitted in subsequent civil proceedings as admissions. *Hartigan v. Robertson*, 87 Ill. App. 3d 732, 738, 409 N.E.2d 366, 371 (1980). Additionally, stipulating to facts leading to an order of supervision followed by an order of expungement have also been held admissible in a subsequent civil case as an admission of a party opponent. *Batterton v. Thurman*, 105 Ill. App. 3d 798, 801-02, 434 N.E.2d 1174, 1176-77 (1982).

Defendants argue that Forgas' guilty plea should not be used against them because Forgas simply pleaded guilty because he was not represented by an attorney. Forgas claims he was not aware that pleading guilty to the traffic citation would be considered an admission in a civil suit. Commentators have noted the inequity in a rule that defendants, properly advised, permit a judgment to the traffic offense to be entered against them after a plea of not guilty, while those ignorant of the consequences simply plead guilty. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.4 (7th ed. 1999). However, when a person is involved in an automobile accident and is issued a traffic citation as a result, the person must realize that civil litigation is a very real possibility and that the guilty plea to the traffic charge could reflect adversely upon him in a subsequent civil proceeding. *Wright v. Stokes*, 167 Ill. App. 3d 887, 892, 522 N.E.2d 308, 311 (1988). Forgas' explanation for pleading guilty may also be considered by the jury. *Barnes v. Croston*, 108 Ill. App. 2d 182, 184-85, 247 N.E.2d 1, 2-3 (1969).

While Forgas' guilty plea is in no way conclusive of willful and wanton conduct, we consider it in reviewing the trial court's grant of summary judgment and find that it provides factual support for plaintiff's allegations in counts II and III. The jury will decide whether the plea, in conjunction with other evidence surrounding the collision, justifies a finding that Forgas' conduct was willful and wanton.

Therefore, looking at the record in the light most favorable to plaintiff, material issues of fact are in dispute as to whether Forgas' "course of action *** show[ed] an utter indifference to or conscious disregard for the safety of others or their property" under the Tort Immunity Act (745 ILCS 10/1—210 (West 1994)), and we reverse summary judgment on counts II and III.

### B. Dismissal of Counts IV and V

In counts IV and V of the first-amended complaint, plaintiff alleges that Forgas and the City of Springfield (through Forgas as its

employee) failed to exercise due care in the performance of the Operating Procedures of the Springfield fire department while operating an emergency vehicle, and, as a result of Forgas' negligence, plaintiff suffered injuries. The Operating Procedures require emergency vehicle operators to stop and account for all lanes of traffic before entering the intersection against a red light. Essentially, plaintiff argues that by implementing the Operating Procedures, defendants assumed a duty to refrain from *negligently* operating emergency vehicles and in essence waived the protections granted them in the Tort Immunity Act.

The trial court dismissed counts IV and V for failure to state a cause of action. Our review of that decision is *de novo. AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684, 688, 695 N.E.2d 882, 886 (1998).

■■ ■ Whether a legal duty exists is a question of law and is determined by reference to whether the parties stood in such a relationship to each other that the law imposes an obligation on one to act for the protection of the other. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238, 665 N.E.2d 1260, 1272 (1996). In the end, the law must say what is legally required. *Rhodes*, 172 Ill. 2d at 238, 665 N.E.2d at 1272. We hold that the Springfield fire department's implementation of the Operating Procedures does not constitute an assumption of duty that alters the duty owed to plaintiff.

We have already established that defendants' liability will derive, if at all, from a violation of section 5—106 of the Tort Immunity Act (745 ILCS 10/5—106 (West 1994)), which requires a finding of willful and wanton conduct. Internal rules and procedures, like the Operating Procedures, do not impose a legal duty upon municipal entities and their employees. See *Dezort v. Village of Hinsdale*, 35 Ill. App. 3d 703, 708, 342 N.E.2d 468, 472 (1976); see also *Blankenship v. Peoria Park District*, 269 Ill. App. 3d 416, 422, 647 N.E.2d 287, 291 (1994) (park district's internal rules requiring one lifeguard to remain on duty during adult swim did not create a legal duty to have one lifeguard on duty); *Fillpot v. Midway Airlines, Inc.*, 261 Ill. App. 3d 237, 244, 633 N.E.2d 237, 242 (1994) (airline's policy manual requiring clearing of walkways did not create such a duty).

Plaintiff's assumption-of-duty counts based on negligence do not state a claim for relief against the defendants because the Operating Procedures do not constitute a voluntary assumption of duty to stop before entering the intersection when responding to an emergency call. The trial court's dismissal of counts IV and V was proper.

## III. CONCLUSION

For the reasons stated, we affirm summary judgment on count I

and the dismissal of counts IV and V, but reverse summary judgment on counts II and III and remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

KNECHT, P.J., and STEIGMANN, J., concur.