Rule 23 order filed
August 6, 2019.
Motion to publish granted
August 28, 2019.

2019 IL App (5th) 180397

NO. 5-18-0397

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JEREMY HICKS and ISAIAH SAMPSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-L-660 |
| | ) | |
| THE CITY OF O'FALLON, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justices Cates and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    On November 11, 2015, an ambulance, driven by a paramedic employed by the City of

O'Fallon, Illinois (City), was involved in a single vehicle accident.[1] Plaintiffs Jeremy Hicks and

Isaiah Sampson, a minor with cerebral palsy, were passengers in the ambulance and sustained

injuries. Hicks and Sampson initially filed separate complaints, but the circuit court later

consolidated the cases.

¶ 2    The City filed a motion for summary judgment, arguing that it was entitled to judgment

as a matter of law because (1) there was a lack of evidence of willful and wanton conduct on the

City's part and (2) Hicks's claim was time-barred under the applicable statute of limitations.

_____

[1]While the complaints and other documents indicate that no accident took place on November 11, 2015, the deponents testified that the accident occurred on November 17, 2015. The discrepancy is not relevant to the disposition of the appeal.

1

Following the circuit court's judgment in favor of the City, the plaintiffs filed a timely notice of appeal. For the following reasons, we affirm.

¶ 3                                               I. Background

¶ 4       On November 11, 2015, Richard Palmer and Terry Sill, two paramedics employed by and in acting in their capacity as employees of the City, arrived at Sampson's guardian's home in Shiloh, Illinois, following a report of a seizure-like episode. It was determined that Sampson needed further care at Cardinal Glennon Children's Hospital (Cardinal Glennon) in St. Louis, Missouri. Sill drove the ambulance while Hicks, Sampson's uncle, sat in the passenger seat and Palmer rode in the back of the ambulance with Sampson. While driving westbound on Interstate 64 towards St. Louis, Sill lost control of the ambulance, struck wire barriers, hit water in a median, and ran off the road.[2]

¶ 5       On December 15, 2016, Hicks filed a complaint, alleging the City had negligently and carelessly (1) operated the ambulance at a speed greater than reasonable and proper with regard to traffic conditions and (2) failed to concentrate on driving, appreciate the road conditions, and keep a proper lookout.[3] As a result, Hicks suffered pain and injuries to his head, neck, and back, as well as muscle and tissue damage and trauma. Due to his injuries, Hicks incurred numerous medical expenses.

¶ 6       On January 24, 2017, the City filed a motion to dismiss Hicks's claim with prejudice. The City claimed that Hicks had failed to file his complaint before the expiration of the one-year statute of limitations set forth in section 8-101(a) of the Local Governmental and Governmental

_____

[2]The plaintiffs asserted in their complaints that the ambulance struck a tree at the time of the accident. The deposition testimony, however, does not indicate that fact. Instead, Sill testified that he lost control of the ambulance and hit "wire barriers" after the ambulance swerved from the inside lane of the roadway.
[3]Hicks originally filed his claim against O'Fallon Shiloh Emergency Medical Services. On February 14, 2017, Hicks filed a motion for substitution of a party defendant to name the City of O'Fallon as the proper defendant.

Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101(a) (West 2016)). Shortly thereafter, Hicks filed a motion for leave to file an amended complaint. The circuit court granted Hicks's motion and determined, without explanation, that the City's pending motion to dismiss was moot.

¶ 7     On March 20, 2017, Hicks filed an amended complaint, alleging the City's employee lost control of the ambulance, ran off the road, and struck a tree because the ambulance was traveling at an unsafe speed during heavy rainfall. Hicks also asserted that the "ambulance ride arose out of patient care to [Sampson]," and the City's employees provided patient care to Sampson during the transport to Cardinal Glennon. Hicks argued that the City's employees demonstrated an utter indifference to or conscious disregard for his and Sampson's safety, thus, violating the duty they owed the plaintiffs. As a direct and proximate cause of the accident, Hicks suffered injuries to his head, neck, and back, as well as tissue trauma and damage.

¶ 8     On April 13, 2017, the City filed a motion to dismiss Hicks's amended complaint. The City asserted that Hicks's claim was time-barred under section 8-101(a) of the Tort Immunity Act (745 ILCS 10/8-101(a) (West 2016)). The City argued that even though section 8-101(b) of the Tort Immunity Act (745 ILCS 10/8-101(b) (West 2016)) created a two-year statute of limitations exception, it was limited to injuries "arising out of patient care." According to the City, neither Hicks nor Sampson were patients of the City, and even if the term "patient" referred to persons being treated and transported by emergency personnel, Hicks's injuries did not arise out of patient care because he was not "the person receiving care" in the ambulance.

¶ 9     Following a hearing on the City's motion to dismiss, the circuit court directed the City to file a reply in support of its motion on or before June 23, 2017, which the City timely filed. The City argued that Hicks's argument had "absolutely no merit" because the Illinois General

3

Assembly clearly delineated section 8-101(b) of the Tort Immunity Act to apply to patients receiving care in public hospitals, not to nonpatients riding in ambulances. Next, the City argued that Hicks, by his own admission, did not personally receive medical care at the time of the injury and was not injured as a result of negligent medical care. As such, the City asserted that the two-year statute of limitations period was inapplicable because Hicks's injuries resulted from a traffic accident.

¶ 10 On June 27, 2017, Hicks filed a response to the City's motion to dismiss. Hicks, relying on *Wilkins v. Williams*, 2013 IL 114310, asserted that "[j]ust like it would be illogical to allow a third party a greater right of recovery than a patient as a result of the same occurrence, it would be illogical to allow a patient a greater right of recovery than a third party as a result of the same occurrence." Specifically, Hicks argued that the City was liable for his damages because his injuries occurred while the City's employee provided patient care to Sampson. That same day, the circuit court denied the City's motion to dismiss.

¶ 11 On July 10, 2017, the parties filed a joint motion for certified questions under Illinois Supreme Court Rule 308 (eff. July 1, 2017), requesting the circuit court certify the following questions for appellate review:

> "a. Whether the term 'patient care' set forth in 745 ILCS 10/8-101(b) applies to individuals riding, but not receiving medical attention, in an ambulance owned and operated by a municipality.

> b. Whether the term 'arising out of patient care' set forth in 745 ILCS 10/8-101(b) applies to situations where an individual is injured as the result of a traffic accident while riding, but not receiving medical attention, in an ambulance owned and operated by a municipality."

¶ 12 On July 17, 2017, the circuit court set a hearing for August 9, 2017, on the parties' joint motion for certified questions. The record does not contain the circuit court's order granting or denying the joint motion.

4

¶ 13    On August 11, 2017, the City filed an answer to Hicks's amended complaint. The City admitted that Hicks and Sampson were passengers in an ambulance that was involved in a vehicle accident on November 11, 2015. The City denied, however, the following: (1) the ambulance ride arose out of patient care to Sampson; (2) the City's employees provided care to Sampson while transporting Hicks and Sampson to the hospital; (3) it was raining heavily during the transport, and, given the conditions on the roadway, the ambulance was driven at an uncontrollable speed; (4) the City's employee driving the ambulance lost control of the vehicle before it ran off the road and struck a tree; (5) as a direct and proximate result of the accident, Hicks sustained physical and emotional damages and incurred medical expenses; (6) the City's employees acted in a willful and wanton manner; and (7) the City's employees showed an utter indifference to or conscious disregard for Hicks's safety in operating the ambulance.

¶ 14    In addition to the City's denials, it also asserted three affirmative defenses. Because the City was a local public entity, as defined by section 1-206 of the Tort Immunity Act (745 ILCS 10/1-206 (West 2016)), the City stated the following: (1) Hicks was required to file his claim within one year of the alleged accident; (2) the City and its employees were not liable for the negligent operation of the vehicle, including transportation of a person to a medical facility; and (3) the City was not liable for the acts or omissions of its employees where no liability was present. The City requested immunity from liability and dismissal of Hicks's amended complaint with costs.

¶ 15    On November 3, 2017, Sampson, represented by the same counsel as Hicks, filed a complaint against the City, asserting that his ambulance ride to Cardinal Glennon arose out of patient care. According to Sampson, the driver operated the ambulance at an unsafe speed during heavy rain. As a result, Sampson sustained injuries after the driver lost control of the ambulance,

ran off the road, and struck a tree. Shortly thereafter, Sampson filed a motion to consolidate his case with Hicks, which the circuit court granted.

¶ 16                                        A. Jeremy Hicks

¶ 17    On February 1, 2018, Hicks testified to the following in a discovery deposition. Since 2010, Hicks had been an ad specialist at the East St. Louis Monitor Newspaper. At the time of the deposition, Hicks had been looking for work as a welder, but his "injury actually inhibits me from seeking out anything else, because I have like these muscle spasms to where I can't feel *** my hands."

¶ 18    Hicks explained that his mother called 9-1-1 on November 17, 2015, after Sampson had multiple seizures. Once the paramedics arrived, Sampson was placed on a gurney and wheeled to the ambulance. While seated in the passenger seat, Hicks viewed Sampson in the back of the ambulance with an oxygen mask across his face. The straps across Sampson's chest were not strapped down completely because he was still having seizures. Hicks testified that the only communication he had with the paramedics was prior to departing when they told him to get in the ambulance if he was going to ride because, according to Hicks, "I guess [Sampson] wasn't breathing properly or whatnot."

¶ 19    As the ambulance departed, it was dark outside, although the rain had lightened up. During the ride, Hicks texted on his phone and did not converse with the paramedics. The paramedic operating the ambulance never turned on the emergency sirens or lights. When the ambulance entered Interstate 64 westbound for St. Louis, the rain "never completely stopped," but it "slowed down *** to where it went from hard to not raining so hard." Specifically, he testified that the rain had "lightened up" from the time the ambulance left the house to the time of the accident.

6

¶ 20   As the ambulance came to the bottom of a hill on Interstate 64, just past Fairview Heights, Illinois, Hicks, still texting at the time, felt the ambulance slide to the right. When Hicks "looked over [at the speedometer]," Sill "was doing like 70 something. It was over 75, that's for sure, but which wasn't out of the ordinary because [Sampson] like was having seizures." As the ambulance spun out, Hicks bounced around the front of the cab, hitting the passenger side window and door. Hicks noticed that a pickup truck had swerved to avoid the ambulance. After Hicks exited the passenger side door, his knees became weak and he sat on the side of the road. Following the accident, Hicks complained of right shoulder pain and a headache. Hicks was later transported to St. Louis University Hospital and diagnosed with a pinched nerve in his neck. After he was discharged the next day, Hicks was referred to a pain management specialist.

¶ 21   Following his initial hospitalization, Hicks visited the emergency room several times for steroid injections because his "arm gets numb or [his] hands start tingling," and he is unable to fully rotate his back. Although Hicks attended physical therapy and received ongoing medical treatment, his injuries did not improve. Following the accident, Hicks was unable to run or play sports, particularly baseball, and he had difficulty standing for long periods of time, occasionally had trouble sleeping, and had problems lifting items with his right arm.

¶ 22   On April 24, 2018, the depositions of Jeff Wild, Sill, and Palmer were taken. The following testimony was adduced.

¶ 23                               B. Jeff Wild

¶ 24   Wild testified to the following. Wild had worked for the City for 30 years, specifically, 26 years as a police captain and 4 years in his current position as business manager of the City of O'Fallon EMS department. As business manager of the department, Wild ran the day-to-day operations and managed three supervisors. On November 17, 2015, two paramedics, Sill, who

7

drove the ambulance, and Palmer, who had patient care responsibility, responded to a call prior to the accident at issue. The supervisor on duty was Jeremy Sherman. Wild noted that all paramedics were required to attend annual training on how to safely operate an ambulance.

¶ 25    Wild testified that he had no reason to dispute that the ambulance was operated in adverse conditions. Wild stated that to prevent accidents in adverse conditions, the driver was to maintain a slower speed, although he was unsure whether a specific policy was in place. Wild further indicated that the City allowed family members to ride in the ambulance as long as it was approved by the department head. Here, prior approval did not take place; however, "it is a common practice for us to allow a family member to ride, especially going over to the City of St. Louis" to ensure safety of the patient at the hospital. Lastly, Wild noted that Sill had received a written reprimand on January 21, 2016, which was standard practice anytime an employee was involved in a single vehicle accident. Although Wild could not recall specifics, he remembered that the reprimand was later rescinded following timing issues with the investigation.

¶ 26                                  C. Terry Sill

¶ 27    Sill, a paramedic with 31 years of experience, had been employed by the City for 8 years at the time of the deposition. On November 17, 2015, Sill was driving an ambulance westbound on Interstate 64 from Illinois to St. Louis, Missouri, for "five or six miles" when the accident occurred. Prior to the accident, Sill had used the windshield wipers intermittently, did not turn on the emergency lights or sirens, and did not see any puddling on the roadway. At the bottom of a hill, just past exit 157, Sill felt a sudden pull on the right side of the ambulance. Once he lost control, the ambulance first hit a wire barrier and then water in the median before it spun around crossways to the other lanes. Sill could not state the exact speed he was traveling, but he had "no reason to doubt that [he] was going the speed limit," which was 65 miles per hour, because he

8

remembered driving with the flow of traffic. Sill believed he was driving at a comfortable speed and in control of the vehicle, and he did not experience any issues as he traversed down the hill.

¶ 28   Following the accident, Sill checked on all passengers and then called for assistance. At that time, Hicks exited the ambulance from the passenger seat and laid down on the interstate before Sill assisted him to the back of the ambulance. Sill recalled attending training on the need to increase stopping distances when adverse conditions were present. Approximately two months after the accident, Sill was issued a written reprimand.

¶ 29   On cross-examination, Sill did not believe a passenger in the front seat could see the speedometer. Instead, a passenger, "[a]t the very least," could see "the very low end" of the speedometer. Sill indicated that, although he "immediately slowed down, took [his] foot off the gas, [and] tried to steer into it," the ambulance spun around and hit a wire barrier fairly quickly because he was operating the vehicle in the inside lane. Sill believed he was traveling between "60 to 65 with the flow of traffic" on a roadway he had driven "all the time for many years." Sill did not provide medical attention to Hicks or Sampson.

¶ 30                             D. Richard Palmer

¶ 31   Palmer, a paramedic with the City since 2014, testified to the following. On November 17, 2015, Palmer provided patient care to Sampson for emergency medical services. Palmer indicated that a "fairly substantial amount" of rain had fallen in the days preceding the accident, and it had been raining "fairly well" when they arrived at the home in Shiloh, Illinois. The paramedics were informed that Sampson had experienced seizure-like activity followed by confusion. Cardinal Glennon was the chosen hospital, following Sampson's guardian's request, and Sampson was transported to the ambulance to "begin rendering further care," specifically, oxygen, heart monitoring, and intravenous access.

9

¶ 32    Palmer rode in the back compartment of the ambulance with Sampson. There was no window access, but Palmer remembered that "it had been raining substantially hard" when he got in the ambulance. The ambulance was traveling down Interstate 64 without emergency lights or sirens. When Palmer started to slide in the ambulance, he grabbed the right rail of the stretcher to protect Sampson. When the ambulance slid the opposite way, Palmer pulled himself on top of Sampson to protect him from debris. Palmer heard "a lot of crunching, just loud bangs and noises" before the ambulance eventually stopped. Once Sampson was carried out of the side door and transported to Cardinal Glennon by responding personnel, Palmer exited the vehicle. Sherman transported Palmer and Sill to Belleville Memorial Hospital where Palmer complained of severe pain, redness, and swelling in his left hand.

¶ 33    On cross-examination, Palmer did not believe it was possible for a front seat passenger to see the speedometer or look into the back compartment of the ambulance. Palmer did not provide medical attention to Hicks, and he did not observe Hicks's claimed injuries at any point after the accident.

¶ 34    On June 19, 2018, the City filed a motion for summary judgment, arguing that (1) Hicks's claim was time-barred under the one-year statute of limitations set forth in section 8-101(a) of the Tort Immunity Act and (2) Hicks's and Sampson's claims were barred because no evidence of willful or wanton conduct on the part of the City existed.

¶ 35    On July 6, 2018, the plaintiffs filed a response to the City's motion for summary judgment. The plaintiffs' response reiterated the same arguments concerning the statute of limitations issue addressed in Hicks's June 27, 2017, response to the City's motion to dismiss. The plaintiffs asserted that "[b]ecause the transport of a patient constitutes the provision of medical services under *Wilkins* and because medical services constitutes [*sic*] patient care under

10

*Kaufmann*, the remaining issue is whether a third party—such as a passenger in an ambulance—would be subject to the 2-year statute of limitations." The plaintiffs also argued that Palmer, per his own deposition testimony, had provided patient care to Sampson in the ambulance. Thus, the City was liable for Hicks's damages, to the extent his injuries were caused by willful and wanton conduct, because they arose out of patient care. Lastly, the plaintiffs argued that there was a genuine issue of material fact regarding willful and wanton conduct—specifically, whether Sill was driving too fast given the conditions and whether the speed showed a conscious disregard for the plaintiffs' safety.

¶ 36     On July 17, 2018, the circuit court ordered the parties "to file further briefs regarding the statute of limitations issue if they so choose." The court set a July 31, 2018, deadline for the City to file a reply in support of its motion for summary judgment and an August 7, 2018, deadline for the plaintiffs to file a surreply to the motion for summary judgment.

¶ 37     On August 1, 2018, the City filed its reply in support of its motion for summary judgment. The City argued that the two-year statute of limitations, pursuant to section 8-101(b) of the Tort Immunity Act, arose out of claims relating only to patient care. Relying on *Kaufmann v. Schroeder*, 241 Ill. 2d 194, 200-01 (2011), the City asserted that the two-year statute of limitations did not apply because Hicks was not a patient, that is, someone who received medical care. Rather, the City argued that "Hicks' injuries arose solely out of a motor vehicle accident." Moreover, in addition to the plain language of section 8-101(b), the City argued that the legislative history of the statute demonstrated that the two-year statute of limitations did not apply to the case at issue because the legislative purpose of the statute was "to cure an inequity between patients receiving care in a public hospital versus a private hospital."

11

¶ 38 Moreover, the City asserted that Hicks, in relying on *Wilkins*, incorrectly argued that because the phrase " 'medical services' referenced in Section 3.150(a)" of the Emergency Medical Services (EMS) Systems Act applied to third parties, then the phrase " 'patient care,' as set forth in Section 8-101(b)," also applied to third parties. The City requested the circuit court grant its motion for summary judgment and dismiss Hicks's claim with prejudice. Alternatively, the City requested that the court certify the statute of limitations issue for interlocutory review before the appellate court.

¶ 39 On August 3, 2018, the plaintiffs filed a surreply to the City's motion for summary judgment, arguing that the City's position "presumes that the EMS Act and Tort Immunity Act are 'completely unrelated' for purposes of this case." The plaintiffs argued that the language of the EMS Act was "broad enough to include other plaintiffs negligently injured by an act or omission resulting from the provision of emergency or nonemergency medical services," as contemplated by *Wilkins*, 2013 IL 114310, ¶ 30. Likewise, the Tort Immunity Act applied to the nature of the services, not the recipient. The plaintiffs requested denial of the City's motion for summary judgment.

¶ 40 On August 13, 2018, the circuit court granted, without specific explanation, the City's motion for summary judgment. The plaintiffs filed a timely notice of appeal.

¶ 41                                        II. Analysis

¶ 42 On appeal, the plaintiffs argue that the circuit court erred in granting the City's motion for summary judgment because the following genuine issues of material fact existed: (1) whether the City's employee's conduct was willful and wanton for operating the ambulance at an unsafe speed considering the wet conditions on the roadway at the time of the accident and (2) whether Hicks's claim was timely filed. We address these contentions in turn.

12

¶ 43  This case comes before us following the circuit court's granting of the City's motion for summary judgment. Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, reveal there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); see also *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). The decision to grant or deny summary judgment is reviewed *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993) (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 131-32 (1992)).

¶ 44  The legislature has generally insulated public entities and the employees who operate ambulances from negligence liability for decisions made and actions taken while operating a motor vehicle in response to an emergency. 745 ILCS 10/5-106 (West 2016). Section 5-106 of the Tort Immunity Act provides the following:

> "§ 5-106. Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." 745 ILCS 10/5-106 (West 2016).

An important reason for "limited immunity is that if an ambulance operator is burdened with potentially devastating personal liability for actions taken in the course of responding to an emergency, it is likely that his or her performance would be hampered." *Hampton v. Cashmore*, 265 Ill. App. 3d 23, 29 (1994) (citing *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 944 (1992)). If this general policy did not underlie section 5-106, "employee

performance will certainly be hampered." *Buell*, 237 Ill. App. 3d at 944 (citing *Stephens v. Cozadd*, 159 Ill. App. 3d 452, 458 (1987)).

¶ 45    In the case at bar, there was no dispute that Sill was a public employee in the midst of an emergency call within the meaning of the Tort Immunity Act. As such, the plaintiffs had to present evidence that Sill operated the ambulance in a willful and wanton manner.

¶ 46    Section 1-210 of the Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). The term "willful and wanton" includes a range of mental states, from actual or deliberate intent to cause harm, to conscious disregard for the safety of others or their property, to utter indifference for the safety or property of others. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). Our supreme court has noted that willful and wanton conduct, unlike negligence, requires a heightened state of mind, that is, a " 'conscious and deliberate disregard for the rights or safety of others.' " *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992) (quoting *Bresland v. Ideal Roller & Graphics Co.*, 150 Ill. App. 3d 445, 458 (1986)).

¶ 47    In determining whether willful and wanton conduct exists in a given case, it is necessary to closely scrutinize the facts provided in the record. *Hampton*, 265 Ill. App. 3d at 30. Since the question necessarily turns on a question of degree, " 'a hard and thin line definition should not be attempted.' " *Hampton*, 265 Ill. App. 3d at 30 (quoting *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 430 (1980)). That is, under the facts of one case, " 'willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees

14

less than intentional wrongdoing.' " *Pfister v. Shusta*, 167 Ill. 2d 417, 422 (1995) (quoting *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76 (1994)).

¶ 48 Whether conduct is willful and wanton is ultimately a question of fact. *Young v. Forgas*, 308 Ill. App. 3d 553, 562 (1999) (citing *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326 (1995)). Nevertheless, a court may hold as a matter of law that a public employee's actions do not amount to willful and wanton conduct where no other contrary conclusion may be drawn from the record presented. *Young*, 308 Ill. App. 3d at 562 (citing *Urban v. Village of Lincolnshire*, 272 Ill. App. 3d 1087, 1094 (1995)). Summary judgment is proper where the acts of the local public entity cannot be characterized as willful and wanton conduct. *Hampton*, 265 Ill. App. 3d at 31 (citing *Dunbar v. Latting*, 250 Ill. App. 3d 786, 793 (1993)).

¶ 49 Viewing the evidence in the light most favorable to the plaintiffs, we cannot find that the evidence raises a question of fact relating to whether Sill's conduct was willful and wanton when he traversed Interstate 64 on the evening of November 11, 2015, to transport Sampson, a pediatric patient experiencing seizure-like activity, to Cardinal Glennon. Although Hicks and Sampson are not required to prove their case at the summary judgment stage, they are required, nonetheless, to present some factual basis that would arguably entitle them to judgment. *Olympic Restaurant Corp. v. Bank of Wheaton*, 251 Ill. App. 3d 594, 603 (1993) (citing *Lutz v. Goodlife Entertainment, Inc.*, 208 Ill. App. 3d 565, 568 (1990)).

¶ 50 First, the evidence does not support a conclusion that Sill operated the ambulance with deliberate disregard for the rights or safety of others. Hicks testified that the speedometer showed "70 something," but he also stated that "[i]t was over 75, that's for sure." In contrast, Sill's testimony established that he was driving with the flow of traffic and that he had "no reason to doubt that [he] was going the speed limit," which was 65 miles per hour, on a roadway he had

15

traversed "all the time for many years." Even assuming Hicks's testimony was accurate and truthful, "driving at an excessive rate of speed alone is not decisive as to the issue of willful and wanton conduct." *Harris v. Thompson*, 2012 IL 112525, ¶ 45. Rather, "speed is only a single circumstance in the totality of the evidence presented to establish willful and wanton conduct." *Harris*, 2012 IL 112525, ¶ 45 (citing *Bartolucci v. Falleti*, 382 Ill. 168, 175-76 (1943), and *Murphy v. Vodden*, 109 Ill. App. 2d 141, 149-50 (1969)); see also *Bosen v. City of Collinsville*, 166 Ill. App. 3d 848, 850 (1987) (although emergency vehicle entered intersection at excessive speed, the totality of the circumstances nonetheless failed to show a conscious disregard or utter indifference to the safety of others on the part of the driver).

¶ 51    Next, the plaintiffs argue that Sill's failure to operate the ambulance at a speed below the speed limit violated the City's policies and procedures, per Wild's deposition testimony, that required an ambulance to be operated slower in adverse conditions than it might be otherwise in nonadverse conditions. First, we note that Wild testified that drivers were to maintain slower speeds during adverse weather conditions, although he was unsure whether a specific policy was in place. Moreover, our colleagues in the First District stated that a "[v]iolation of self-imposed rules or internal guidelines *** 'does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, willful and wanton conduct.' " *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 781 (2006) (quoting *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 454 (1997)). Thus, a violation of the City's policy, if one had existed at the time of the accident, would not alone constitute evidence of willful and wanton conduct.

¶ 52    Lastly, in cases involving an automobile accident, our appellate court has stated that demonstrating a reckless disregard for the safety of others "would include demonstrating that defendant had notice that would alert a reasonable person that a substantial danger was involved

16

but failed to take reasonable precautions under the circumstances." *Valiulis v. Scheffels*, 191 Ill. App. 3d 775, 789 (1989) (citing *Hering v. Hilton*, 12 Ill. 2d 559, 564 (1958), and *Kirshenbaum v. City of Chicago*, 43 Ill. App. 3d 529, 533 (1976)). Although testimony demonstrated that it had rained for several days before the accident, the record is devoid of evidence that Sill was aware of puddles of water on the roadway that presented a substantial danger. Sill testified that he had traveled "five or six miles" on Interstate 64 before he felt a sudden pull on the right side of the ambulance and lost control of the vehicle. Subsequently, the ambulance hit a wire barrier and then came into contact with water in the median. Additionally, Hicks indicated that the severity of the rain had "lightened up" from the time the ambulance left Shiloh, Illinois, to the time of the accident on Interstate 64. Thus, the record does not support a finding that Sill had notice of a substantial danger and failed to exercise reasonable precautions.

¶ 53    Based on the foregoing, as a matter of law, we find there was no willful and wanton conduct on the part of the City's employees. As a result of our disposition of this issue, it is unnecessary to address the statute of limitations issue where resolution would have no bearing on the ultimate outcome.

¶ 54                                  III. Conclusion

¶ 55    For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.


¶ 56    Affirmed.

17

2019 IL App (5th) 180397

NO. 5-18-0397

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JEREMY HICKS and ISAIAH SAMPSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-L-660 |
| | ) | |
| THE CITY OF O'FALLON, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Rule 23 Order Filed:** August 6, 2019
**Motion to Publish Granted:** August 28, 2019
**Opinion Filed:** August 28, 2019

---

**Justices:**        Honorable John B. Barberis, J.

Honorable Judy L. Cates, J., and
Honorable James R. Moore, J.
Concur

---

**Attorney for Appellants**        Jeremy A. Gogel, 4542 West Pine Boulevard, St. Louis, MO 63108

---

**Attorney for Appellee**        Brian M. Funk, O'Halloran, Kosoff, Geitner & Cook, LLC, 650 Dundee Road, Suite 475, Northbrook, IL 60062